**HAMILTON (City), Plaintiff, v. VAN GORDON, Defendant.**

Common Pleas Court, Butler County.

No. 77063. Decided February 9, 1959.

Clem Imfeld, Jr., for plaintiff.
Robert L. Marrs, for defendant.

## OPINION

By CRAMER, J.

Shall the City of Hamilton, Ohio, or the Commissioners of Butler County, State of Ohio, make certain repairs to the bridge over Two Mile Creek on "B" Street in the City of Hamilton, Ohio?

This court's answer to that interrogatory is sought in an action for a declaratory judgment brought by the City of Hamilton, Ohio, against the Commissioners of Butler County, State of Ohio.

An agreed statement of facts, a stipulation entered into between the counsel, and oral testimony reveal the following:

Two Mile bridge is located on North "B" Street which is a street running through the City of Hamilton and connects State Route 128 in Hamilton, Ohio, with State Route 127, North of New Miami.

Said bridge is located approximately one mile within the corporate limits of the City of Hamilton on "B" Street which street is entirely within the City of Hamilton.

Said "B" Street is a thoroughfare used by the general public and vehicles other than those of the residents of the City of Hamilton frequently travel on "B" Street, particularly trucks, many of which display out of state licenses.

The City of Hamilton does not have the right to demand and receive a portion of the bridge fund, there being no such fund in existence.

Furthermore, the amount paid over to Butler County through the auto license tax for the year 1957 was $740,419.12 and through gasoline tax $210,000.00.

The City of Hamilton received, in 1957, from the auto license tax the sum of $148,948.76, and from the gasoline tax $224,127.50.

The City of Hamilton insists that under applicable statutes the Commissioners of Butler County are required to repair the bridge in question. On the other hand, the Commissioners contend that in place of the road and bridge fund of former days, revenue is now derived from the gasoline and auto license taxes, a portion of which is allocated to the City of Hamilton which may be utilized and expended for the purpose of road and bridge maintenance. That the statutes under which plaintiff claims the Commissioners are liable for the repair of this bridge have been repealed by implication. It is further contended that since the City receives its share of the gasoline and auto license taxes they in fact are receiving a portion of that which originally was the bridge fund, and that therefore the County Commissioners are exempted from liability for repairs of this bridge which the statutes hereinafter set out apparently impose upon them.

It is further claimed by the Commissioners that the statutes, as

well as **Section 2, Article 12, Ohio Constitution,** place a limitation upon the Commissioners and prohibit them from making any levies for the construction and maintenance of bridges.

The solution of the problem with which we are here confronted depends upon the construction of the following statutory provisions:

**Sec. 5591.02 R. C.**

"The Board of County Commissioners shall construct and keep in repair all necessary bridges in municipal corporations not having the right to demand and receive a portion of the bridge fund levied upon property within such corporations, on all state and county roads and improved roads which are of general and public utility, running into or through such municipal corporation."

The pertinent provisions of §5591.21 R. C., are:

"The Board of County Commissioners shall construct and keep in repair necessary bridges over streams and public canals on or connecting state, county and improved roads, except only such bridges as are wholly in municipal corporations having by law the right to demand, and do demand and receive, part of the bridge fund levied upon property therein. If they do not demand and receive a portion of the bridge tax, the Board shall construct and keep in repair all bridges in such municipal corporations. The granting of the demand made by any municipal corporation for its portion of the bridge tax is optional with the Board."

Then follow certain provisions having to do with submitting to the electors the question of the issuing of county bonds for the construction of bridges.

The reference in the foregoing sections to municipal corporations having the right to share in a bridge fund is an obsolete and inoperative vestige of a much earlier enactment. The Attorney General of Ohio, in Opinion No. 471 of the Opinions of the Attorney General, 1951, at page 214, made the following observation:

"These sections make exception of bridges within villages and cities having the right to demand and which do demand and receive a portion of the bridge fund levied upon property within such corporation. Such exception, however, is not longer of any force and effect and must be disregarded inasmuch as the statute authorizing counties to levy for such bridge fund has been repealed and investigation fails to disclose the enactment of any substitute legislation or the existence at this time of any such fund."

He thereupon stated that the exception was to be disregarded.

We too are of the opinion that since this exception is obsolete, it is to be considered inoperative and disregarded.

We cannot agree with counsel for the Commissioners in his contention that there has been a repeal by implication of the foregoing statutes. The new law (providing for the distribution to and use by municipalities of the gasoline and auto license taxes) was not intended as a substitute for the old law (sharing in the bridge fund); nor is this new law irreconcilably inconsistent with the old, thereby terminating it.

It is the court's duty to give effect, if possible, to both pieces of legislation. This we can do since they are not contradictory or inconsistent.

We cannot, and therefore do not find that the provisions in question, found in §§5591.02 and 5591.21 R. C., have been repealed and therefore are operative. We therefore cannot find that the City of Hamilton by sharing in the revenues derived from the gasoline and auto license taxes comes within the exception found in the statutory provisions hereinbefore recited.

This leaves us with the question as to whether "B" Street falls within the classification of roads mentioned in the statutory provisions so as to require the Commissioners to keep the bridge on the same in repair. In other words, is "B" Street

(1) a state,

(2) county, or

(3) an improved road of general and public utility?

The reference to "connecting roads," found in the foregoing statutes, is, in our opinion, not to connecting roads as such, but to bridges connecting roads. The bridge here in question is located on a street which does connect two state routes but the same does not serve as a bridge to connect such state roads. The bridge here in question, therefore, is not one which connects state roads. See Opinion 811, Attorney General of Ohio, July 17, 1957.

"B" Street is not a county road. This leaves us then with a determination as to whether such street "is an improved road of general and public utility." There is no question that the street does run through the municipal corporation of the City of Hamilton. The County Commissioners have never established this street as part of the county road system.

We agree with the Attorney General of Ohio (Opinion No. 811, 1957 supra) when he asserts "it hardly appears tenable to hold that the Legislature intended that the County Commissioners have primary responsibility for all bridges 'on or connecting improved roads' without qualification as set forth in §5591.21 R. C., in view of the provision of §5591.02 R. C., providing for such responsibility in the case only of bridges 'on improved roads **which are of general and public utility that run into or through such municipal corporation.**' I think it clear that the two sections as they refer to 'improved roads' must be read in pari materia and that it be assumed the legislative intent was that the language 'improved roads' as found in §5591.21 R. C., carry out by implication the qualification and limits of §5591.02 R. C."

In the opinion of the Attorney General above referred to, he held that the question "whether a particular bridge is located on an improved road of general or public utility is one of fact for the determination in the first instance by the Board of County Commissioners concerned."

Here, we assume, though there is nothing to indicate that the specific question was considered, that the Board of County Commissioners made such initial determination in refusing to admit liability for the repair of the bridge. A judicial review of the Board's determination is implicit in the cause now before us.

From the evidence here submitted to us, we find that "B" Street is

an improved road of general or public utility, thus requiring the Board of County Commissioners to repair the bridge located thereon.

We therefore declare that it is the duty, under the statutes here involved, of the County Commissioners to repair the bridge located on "B" Street.

An entry may be prepared in accordance with this opinion, finding and declaring such duty and responsibility on the part of the County Commissioners in respect to the repair of the bridge here in question.