CITY OF WASHINGTON COURT HOUSE, APPELLANT, *v.* DUMFORD
ET AL., APPELLEES.

[Cite as Washington Court House v. Dumford (1969), 22
Ohio App. 2d 75.]

(No. 406—Decided December 19, 1969.)

*Messrs. Kiger & Hess,* city solicitors, for appellant.

*Mr. Rollo M. Merchant,* prosecuting attorney, for appellees.

KERNS, P. J. This is an appeal on questions of law
from a declaratory judgment of the Court of Common
Pleas of Fayette County.

The action was commenced by the city of Washington Court House, a municipal corporation, appellant herein, seeking a determination as to where the responsibility lies for the construction, repair and maintenance of twelve bridges located within the corporate limits of the municipal corporation. The defendants are the County Commissioners of Fayette County, appellees herein.

The determinative issue in the case revolves around the construction of two statutes.

Section 5591.02, Revised Code, provided as follows:

"The board of county commissioners shall construct and keep in repair all necessary bridges in municipal corporations not having the right to demand and receive a portion of the bridge fund levied upon property within such corporations, on all state and county roads and im-

proved roads which are of general and public utility, running into or through such municipal corporation."

Section 5591.21, Revised Code, reads, in pertinent part, as follows:

"The board of county commissioners shall construct and keep in repair necessary bridges over streams and public canals on or connecting state, county, and improved roads, except only such bridges as are wholly in municipal corporations having by law the right to demand, and do demand and receive, part of the bridge fund levied upon property therein. If they do not demand and receive a portion of the bridge tax, the board shall construct and keep in repair all bridges in such municipal corporations. * * * "

The county contends that its responsibility ends with the construction and maintenance of bridges "on all state and county roads and improved roads which are of general and public utility, running into or through such municipal corporation." On the other hand, the city apparently relies upon the language of Section 5591.21, Revised Code, which says that the county shall "construct and keep in repair all bridges in such municipal corpopration." In resolving the issue, the trial court ruled that the county was responsible for the four bridges on roads running into or through the municipality and that the city was responsible for the other eight bridges within the corporate limits of the municipality.

It has been held, and we agree, that the reference in these sections to cities having a right to share in a "bridge fund" is obsolete and inoperative. *Hamilton* v. *Van Gordon*, 84 Ohio Law Abs. 202. The evidence discloses that moneys derived from gasoline and automobile license taxes are now allocated to municipalities for the purpose of constructing and maintaining bridges.

However, the pertinent statutes have not been without previous consideration and construction. Opinions of the Attorney General, 1951, 214, No. 471; Opinions of the Attorney General, 1955, 653, No. 6030. Nor is the question presented herein completely new or novel. Opinions of the Attorney General, 1957, 316, No. 811.

As early as *Newark* v. *Jones* (1898), 16 C. C. 563, 9 C. D. 196, the court alluded to forerunners of the subject statutes and observed as follows:

"In villages and cities not having the right to demand and receive any portion of the bridge fund levied upon property within such corporation, the county commissioners have the authority and duty to construct and maintain all necessary bridges in state and county roads, free turnpikes and plank roads, which are of general and public utility, running into and through any such village or city, but they have no authority to construct bridges in the streets, as such, of such villages and cities."

In the case of *Piqua* v. *Geist*, 59 Ohio St. 163, the court also makes a distinction between the duties of county commissioners and officers of municipalities with reference to the construction and supervision of bridges.

The case of *Interurban Railway & Terminal Co.* v. *Cincinnati*, 94 Ohio St. 269, lends further insight into the basic problem. In that case, the court referred to the *Geist case*, and, in so doing, stated as follows, at page 278:

"As there pointed out it is the exclusive duty of the municipal authorities to construct and keep in repair any bridge which forms a part of a street established by a city, which is not a part of a state or county road, and the county commissioners have no duty or responsibility whatever in respect to the construction, care and maintenance of any such bridge. On the other hand, the provisions of the statute above cited, in clear and unmistakable language, place upon the county commissioners the duty of constructing and keeping in repair necessary bridges in cities and villages on state or county roads of general public utility running into or through such cities or villages."

The appellant in the present case has failed to cite, and we are unable to find, any authority to support the interpretation which it places upon the applicable statutes. However, in construing the statutes, it is reasonable to believe that the county's obligation to provide for bridges on roads running into and through a municipal corporation is related to the general, as distinguished from local, use of such bridges. Hence, our review of the applicable sections

is not unlike that expressed by the court in *Hamilton* v. *Van Gordon*, 84 Ohio Law Abs. 202, where the fourth paragraph of the headnotes provides as follows:

"Sections 5591.02 and 5591.21, Revised Code, as they refer to 'improved roads' must be read *in pari materia* and it was the legislative intent that the language 'improved roads' as found in Section 5591.21, Revised Code, is qualified and limited by the words 'which are of general and public utility, running into or through such municipal corporation' contained in Section 5591.02 Revised Code."

Although the outdated language of the statutes tends to obscure their meaning, it does not shift the responsibility for the construction and maintenance of bridges. Accordingly, we are of the opinion that the trial court's analysis and determination in this case was correct. The first assignment of error will be overruled.

The second assignment of error is that the order of the trial court denies equal protection of the law to the plaintiff. With reference to this contention, it is conceded by both the appellant and the appellee that there is no specific "bridge fund" out of which the city may request funds to build and maintain bridges, but the evidence discloses that substitute funds have been made available by the Legislature in the form of gasoline taxes, registration and transfer fees and motor vehicle license taxes. These moneys are allocated to counties and cities pursuant to a formula set up by the Legislature.

The mere fact that the funds distributed to the city are inadequate to accomplish their designed purpose does not necessarily mean that the city is being subjected to unequal protection of law. Manifestly, inadequate funding is a chronic malady today at all levels of government.

We also agree that motorists other than inhabitants of the city will from time to time use the city bridges, but the relation of this fact to "unequal protection of the law" involves a form of provincialism which is wholly unrealistic under all the circumstances. The second assignment of error is without merit.

The third assignment of error, which challenges the

weight and sufficiency of the evidence, will likewise be overruled.

The judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

SHERER and CRAWFORD, JJ., concur.