[Cite as *Independence v. Office of the Cuyahoga Cty. Executive*, 2013-Ohio-1336.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97167

---

## CITY OF INDEPENDENCE

### PLAINTIFF-APPELLEE

vs.

## OFFICE OF THE
## CUYAHOGA COUNTY EXECUTIVE, ET AL.

### DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-744246

**BEFORE:** Jones, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** April 4, 2013

**ATTORNEYS FOR APPELLANTS**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Brian R. Gutkoski
     Sara E. DeCaro
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Gregory J. O'Brien
Thomas J. Lee
Christine M. Snyder
Taft, Stettinius & Hollister
200 Public Square
Suite 3500
Cleveland, Ohio 44114

LARRY A. JONES, SR., J.:

{¶1} In this administrative appeal, defendants-appellants, the Office of the Cuyahoga County Executive[1] and Cuyahoga County (collectively the "board"), appeal the trial court's judgment reversing the board's finding that the Old Rockside Road Bridge (the "bridge") was not a bridge of general and public utility.   We affirm.

I.   Procedural History

{¶2} In September 2010, plaintiff-appellee, the city of Independence, submitted a request to the board that it recognize the bridge as one of "general and public utility" under R.C. 5591.02 and 5591.21.   Such a finding would mean that the county would be responsible for the maintenance of and repairs to the bridge.

{¶3} The board addressed the matter at its December 2, 2010 meeting. Representatives from the county prosecutor's and engineer's offices, as well as the city's law director were present.   The representatives from the prosecutor's and engineer's offices contended that the bridge was not one of general and public utility, while the city's law director claimed that it was. At the conclusion of the presentation, the board stated that it would follow the prosecutor's and engineer's recommendation, and voted that the bridge was not one of general and public utility.

{¶4} The city appealed to the common pleas court under R.C. Chapter 2506.   On

[1]Pursuant to App.R. 29, this court has substituted the Office of the Cuyahoga County Executive for the originally named defendant, the Cuyahoga County Board of County Commissioners, which no longer exists.

the city's motion, the trial court permitted the city to submit additional evidence. The city and the board filed a joint motion to schedule an evidentiary hearing or, in the alternative, to schedule discovery. The court granted the alternative request of the motion, and allowed 30 days for discovery and enlarged the time for briefing.

{¶5} Upon the briefs and record, the trial court found that the bridge is one of general and public utility and, therefore, reversed the board's decision. The trial court's judgment reads as follows:

> The court reviewed the briefs and the record and finds that the decision of the Cuyahoga County Board of Commissioners was unreasonable and arbitrary [and] therefore reverses the board's decision. The Old Rockside Road Bridge is found to be a bridge of "general and public utility" as it lies between two municipalities and is therefore not within the municipal corporation as required by O.R.C. 723.01 and O.R.C. 5591. The court finds that Cuyahoga County is responsible for the repair and maintenance of the Old Rockside Road Bridge.

{¶6} The board assigns the following as error:

I. The court of common pleas erred in reversing the Board's decision and declaring Old Rockside Road a road of general and public utility by substituting its judgment for that of the Board.

II. The court of common pleas erred, abused its discretion, and denied defendant[s]-appellants due process of law when the trial court failed to conduct a hearing pursuant to R.C. 2506.03 on the administrative appeal.

II. Facts

{¶7} The record demonstrates the following facts. Old Rockside Road had been a county road until 1967, when it was vacated as such by the county upon the completion of the new Rockside Road. A portion of the road that was vacated includes the bridge; the bridge was not vacated.

{¶8} Part of Old Rockside Road is in Independence and part is in Valley View. The portion of the road that is in Independence runs west from the bridge to a dead end where numerous businesses and a station for the Cuyahoga Valley Scenic Railroad are located.

{¶9} An inspection report prepared by the engineer's office stated that the bridge was in need of significant repairs. The city requested that the county engineer repair the bridge. The prosecutor's office, responding on behalf of the engineer, stated that the bridge is not one of general and public utility, and denied the city's request.

{¶10} The matter was reviewed by the board, which upheld the prosecutor's and engineer's offices' position. The trial court reversed the board's decision.

### III. Law and Analysis

{¶11} In its first assignment of error, the board contends that the trial court erred in reversing its decision.

{¶12} In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 2000-Ohio-493, 735 N.E.2d 433, the Ohio Supreme Court distinguished the standard of review to be applied by common pleas courts and appellate courts in R.C. Chapter 2506 administrative appeals. Specifically, the *Henley* court stated:

The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.

> The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."

(Citations omitted.)   *Id.* at 147.

{¶13} Thus, our more limited review requires us to "affirm the common pleas court, unless [we find], as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). Within the ambit of "questions of law" includes whether the common pleas court abused its discretion. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148, 2000-Ohio-493, 735 N.E.2d 433. Abuse of discretion connotes more than an error of law or of judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶14}** The issue in this case, therefore, is whether the trial court's decision that the bridge is one of general and public utility is supported by a preponderance of reliable, probative, and substantial evidence.

A. The Board's Position and Evidence

**{¶15}** The board, citing *State ex rel. Emerson v. Commrs. of Hamilton Cty.*, 49 Ohio St. 301, 30 N.E. 785 (1892), contends that it was in the "superior position to determine * * * the particular traffic needs within [the] county."   According to the board, because Old Rockside Road is a dead-end road, it is a "non-thruway" or "secondary road" that primarily benefits the city and, thus, should be the city's responsibility.

**{¶16}** The board cites the following in support of its position:   (1) upon completion of the new Rockside Road in 1967, the county vacated Old Rockside Road; (2) the city previously acknowledged, in 1997 and 2003, responsibility for maintaining the bridge and sought and paid for inspections of it; and (3) a two-day traffic study conducted by the engineer's office in 2010 showed that less than 2,000 vehicles traveled on the bridge, while approximately 24,300 vehicles traveled on the new Rockside Road.

**{¶17}** According to the board, the trial court merely substituted its judgment for that of the board because its judgment entry is "devoid of any significant legal analysis and fails to cite any case law."

B. The City's Position and Evidence

**{¶18}** The city contends that the portion of Old Rockside Road that is in its municipality is the only connection to numerous businesses that serve "industrial users

with county, state, and national customer bases."  The city further cites the Cuyahoga Valley Scenic Railroad, which has a station on Old Rockside Road and is only accessible via the bridge.  Thus, the city's position is that the bridge is one of general and public utility.

{¶19} The city submitted various documentation in support of its position.  The following are examples from some of the businesses, who all stated or averred that the sole means of ingress and egress to their businesses is via the bridge: (1) a letter from the general counsel for All Erection & Crane Rental Corp., which stated that it is "among the largest crane and equipment companies in North America" and that its facility on Old Rockside Road plays a "central and vital role" in the company's operations in Cuyahoga County, the state of Ohio, the United States, and Canada; (2) an affidavit of the general manager of Franck & Fric, Inc., who averred that its "largest share of business comes from the Cleveland Clinic, University Hospitals, Case Western Reserve University, as well as other various projects all over the Northeast Ohio market"; (3) an affidavit of the president of American Fleet Services, who averred that its customers are "located all over Cuyahoga County and are not exclusively from Independence"; and (4) an affidavit of the president of Adcraft Decals, Inc., who averred that its customers are "located all over the United States, Canada, Mexico and parts of Europe and are not exclusively from Independence."

{¶20} The city also submitted an affidavit from the president and CEO of the Cuyahoga Valley Scenic Railroad.  The president averred that the station is accessible only via the bridge, and that "passengers come from all over Cuyahoga County, the state of

Ohio, and the nation" to ride the train. He further averred that in 2010 approximately 75,000 passengers boarded the train at the Independence location.

C. Hearing before the Board

{¶21} The hearing before the board lasted approximately 15 minutes. Representatives from the prosecutor's and engineer's offices as well as the law director for the city were present.[2] Counsel for the engineer's office stated that, in conjunction with the prosecutor's office, the county engineer was recommending that the board find that the bridge was not one of general and public utility. A representative from the engineer's office addressed the board and contended that, because the old road was a dead-end street and based on the two-day traffic study, there was not enough traffic to support finding the bridge be one of general and public utility.

{¶22} The law director contended that the traffic generated from the Cuyahoga Valley Scenic Railroad was sufficient in and of itself to qualify the bridge as one of general and public utility. He contended that that traffic, coupled with the traffic generated by the businesses, was more than adequate to qualify the bridge as one of general and public utility. The law director also advised the board that in 2008 the county assumed responsibility for some maintenance of the bridge. A representative from the engineer's office stated that although that was true, the county did so because it was trying to help the city, not because it was obligated to do so.

{¶23} After hearing the parties' positions, one of the commissioners stated that,

---

[2]The witnesses were not under oath or subject to cross-examination.

although the city made "compelling arguments," it was with "rare exception" that he did not follow the recommendation of the engineer's office. The commissioner encouraged the city to pursue the issue with the new county government, which he surmised would probably have a "changed relationship" with the engineer's office.[3]

{¶24} Another commissioner stated that because a legal determination had been made by the engineer's and prosecutor's offices it was "certainly [his] inclination to support the recommendation of our county engineer's office."

{¶25} The majority vote of the board determined that the bridge was not one of general and public utility.

D. Governing Statutes and their Application

{¶26} R.C. 5591.02 governs the county's responsibilities for certain bridges and provides as follows:

> The board of county commissioners shall construct and keep in repair all necessary bridges in municipal corporations on all county roads and improved roads that are of general and public utility, running into or through the municipal corporations, and that are not on state highways.

{¶27} Further, R.C. 5591.21 provides in part as follows:

> Except as provided in section 5501.49 of the Revised Code,[4] the board of county commissioners shall construct and keep in repair necessary bridges

---

[3]The record indicates that the meeting was the last one for the former three-commissioner county board.

[4]R.C. 5501.49 governs bridges on a state highway system within a municipal corporation, and is not applicable here.

over streams and public canals on or connecting state, county, and improved roads.

{¶28} The Twelfth Appellate District has addressed the two statutes, stating:

Sections 5591.02 and 5591.21 [of the] Revised Code, as they refer to "improved roads" must be read in pari materia and it was the legislative intent that the language "improved roads" as found in section 5591.21 [of the] Revised Code is qualified and limited by the words "which are of general and public utility running into or through such municipal corporation" contained in Section 5591.02 [of the] Revised Code.

*Washington Court House v. Dumford*, 22 Ohio App.2d 75, 78, 258 N.E.2d 261 (12th Dist. 1969).

{¶29} In *Piqua v. Geist*, 59 Ohio St. 163, 52 N.E. 124 (1898), the Supreme Court of Ohio held that a county was not required to repair a bridge that was established by a city for the use and convenience of the municipality, and that was not part of a state or county road. Thus, the purpose of R.C. 5591.02 and 5591.21 is to "place responsibility for bridge construction and maintenance upon a city where the bridge is situated on a city street and is meant to facilitate local traffic primarily." *State ex rel. Moraine v. Bd. of Cty. Commrs. of Montgomery Cty.*, 2d Dist. No. 10033, 1987 Ohio App. LEXIS 5849, *11 (Feb. 12, 1987).

{¶30} Upon review, the trial court's determination that the bridge is one of general and public utility was supported by a preponderance of reliable, probative, and substantial evidence. In sum, the evidence demonstrates that the bridge is not primarily for the use and benefit of the city.

{¶31} Accordingly, the board's first assignment of error is overruled.

E.   Lack of Hearing at Trial Court Level

**{¶32}** In its second assignment of error, the board contends that the trial court erred by not holding a hearing in this administrative appeal.   We disagree.

**{¶33}** R.C. 2506.03 governs the "hearing" of an administrative appeal and provides for the submission of additional evidence under certain circumstances. The city filed a motion to submit additional evidence under the statute, and the trial court granted the motion.   This court has held that if any of the circumstances for the submission of additional evidence under the statute apply, the trial court is required to conduct an oral hearing; if not, the trial court may hear the case without an oral hearing. *Dawson v. Richmond Hts. Local School Bd.*, 121 Ohio App.3d 482, 487, 700 N.E.2d 359 (8th Dist.1997); *Scafaria v. Fairview Park*, 8th Dist. No. 61008, 1992 Ohio App. LEXIS 5709 (Nov. 12, 1992).

**{¶34}** Although the submission of additional evidence would generally trigger the hearing requirement, here, after the trial court granted the city's motion to submit additional evidence, the parties filed a "joint motion to schedule an evidentiary hearing or in the alternative to schedule discovery, and enlarge briefing schedule."   Within that motion, the parties submitted that, as an alternative to a hearing, the trial court "could satisfy the hearing requirement of R.C. § 2506.03 by affording the parties the opportunity to conduct discovery over a period of ninety (90) days and then submit respective briefs to [the] Court thereafter."   The trial court granted the motion in part, and ordered a briefing schedule after a 30-day period for discovery.

**{¶35}** We are not persuaded by the board's contention that, in spite of its previous position at the trial court level, the statutory requirement cannot be waived. Further, the board does not contend that it had more evidence or testimony for the trial court to consider.

**{¶36}** In light of the above, the second assignment of error is overruled.

**{¶37}** Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR