**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Independence v. Office of the Cuyahoga Cty. Executive*, **Slip Opinion No. 2014-Ohio-4650.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4650

THE CITY OF INDEPENDENCE, APPELLEE, *v.* OFFICE OF THE CUYAHOGA COUNTY EXECUTIVE, APPELLANT, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Independence v. Office of the Cuyahoga Cty. Executive*, Slip Opinion No. 2014-Ohio-4650.]**

*R.C. 5591.02 and 5591.21—County's obligation to repair bridges—Roads of general and public utility.*

(No. 2013-0984—Submitted May 27, 2014—Decided October 23, 2014.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 97167, 2013-Ohio-1336.

_____

FRENCH, J.

{¶ 1} In this appeal, we consider the extent of a county's responsibility for repairing and maintaining bridges under R.C. 5591.02 and 5591.21. Appellant, the Office of the Cuyahoga County Executive ("county"), and appellee, the city of Independence, each claim that the other is responsible for maintaining and repairing a bridge located in Cuyahoga County, on the border

between Independence and the village of Valley View but on a road that is neither a county road nor a state highway. Because the court of appeals appropriately concluded that the preponderance of substantial, reliable, and probative evidence supports the common pleas court's judgment, which held the county responsible for the bridge's maintenance and repair, we affirm.

*Governing Statutes*

**{¶ 2}** R.C. 723.01 generally places "the care, supervision, and control of the public highways, streets, avenues, [and] bridges * * * within [a] municipal corporation" within that municipal corporation's legislative authority. The term "municipal corporation" encompasses both cities and villages. R.C. 703.01(A).

**{¶ 3}** Despite that general rule, R.C. Chapter 5591 specifically addresses county bridges, and R.C. 5591.02 and 5591.21 place a duty on county commissioners to repair bridges located on improved roads of general and public utility running into or through a municipal corporation within the county. 1990 Ohio Atty.Gen.Ops. No. 90-079, at paragraph three of the syllabus. R.C. 5591.02 provides as follows: "The board of county commissioners shall construct and keep in repair all necessary bridges in municipal corporations on all county roads and improved roads that are of general and public utility, running into or through the municipal corporations, and that are not on state highways." With certain inapplicable exceptions, R.C. 5591.21 similarly requires "the board of county commissioners [to] construct and keep in repair necessary bridges over streams and public canals on or connecting state, county, and improved roads." As to the reference to "improved roads," courts read R.C. 5591.21 in conjunction with R.C. 5591.02 to impose responsibility upon a county with respect to only those improved roads that are of general and public utility. *Washington Court House v. Dumford*, 22 Ohio App.2d 75, 78, 258 N.E.2d 261 (2d Dist.1969).

*Factual and Procedural Background*

{¶ 4} In September 2010, Independence requested that the Cuyahoga County Board of County Commissioners ("board"), the predecessor to the county executive, recognize the Old Rockside Road bridge as a bridge of general and public utility. Independence represented that the Old Rockside Road bridge required significant repairs and asserted that the county was responsible for repairing it as a necessary bridge on an improved road of general and public utility.

{¶ 5} The Old Rockside Road bridge spans the Cuyahoga River and traverses the boundary between Independence and Valley View. After crossing the Cuyahoga River, Old Rockside Road connects with two dead-end roads and comes to a dead end itself in Independence. The Old Rockside Road bridge provides the sole means of access to the businesses and facilities, including a station for the Cuyahoga Valley Scenic Railroad, located off Old Rockside Road in Independence.

{¶ 6} In 1967, Cuyahoga County vacated Old Rockside Road as a county road, pursuant to R.C. 5553.04, after completing construction of a new Rockside Road. Documents created by the county engineer's office in connection with the vacation indicate that Old Rockside Road would remain as a municipal street. Independence admits that it has borne responsibility for the road's maintenance since the county vacated the road.

{¶ 7} At its regular meeting on December 2, 2010, the board determined that Old Rockside Road is not a road of general and public utility.

{¶ 8} Independence appealed the board's decision to the Cuyahoga County Court of Common Pleas, pursuant to R.C. 2506.01. Upon review of the parties' briefs, the record, and newly submitted evidence, the common pleas court reversed the board's decision. In a four-sentence journal entry, the court found the board's decision unreasonable and arbitrary, and stated as follows:

> The Old Rockside Road bridge is found to be a bridge of "general and public utility" as it lies between two municipalities and is therefore not within the municipal corporation as required by O.R.C. 723.01 and O.R.C. 5591. The court finds that Cuyahoga County is responsible for the repair and maintenance of the Old Rockside Road bridge.

{¶ 9} The county appealed, and the Eighth District Court of Appeals affirmed. The appellate court found that a preponderance of reliable, probative, and substantial evidence supported the common pleas court's decision. 8th Dist. Cuyahoga No. 97167, 2013-Ohio-1336, ¶ 30.

{¶ 10} This court accepted the county's discretionary appeal on the following proposition of law:

> A county has no duty to repair or replace a bridge on [a] dead-end private drive serving a limited number of businesses. The county's duty to repair or replace such a bridge depends upon whether the road served by the bridge is a road of general and public utility, and such a road primarily serves a small number of special and private interests.

136 Ohio St.3d 1509, 2013-Ohio-4657, 995 N.E.2d 1212. Despite the phrasing of its proposition of law, the county does not argue that Old Rockside Road is a "private drive," but maintains that since its vacation as a county road, Old Rockside Road has been a municipal street, a local road, or both.

{¶ 11} The county's proposition of law correctly states that its responsibility for repairing the Old Rockside Road bridge depends on whether

4

Old Rockside Road is an improved road of general and public utility, *see* R.C. 5591.02 and 5591.21, and this appeal stems from the board's resolution that the road "is not a road of general and public utility." But both the common pleas court and the court of appeals erroneously refer to the relevant inquiry as whether the Old Rockside Road *bridge* is a bridge of general and public utility.

{¶ 12} Despite the lower courts' misstatement of the issue, the evidence before those courts goes to the nature of the road as much as it goes to the nature of the bridge. For example, the record contains evidence regarding the county's vacation of the road, a 2010 study of traffic using the road and the bridge, the nature of the businesses and facilities located off the road in Independence, the inability of those businesses to access their facilities without traveling over Old Rockside Road and the Old Rockside Road bridge, and the large number of visitors to the Cuyahoga Valley Scenic Railroad who rely on Old Rockside Road and the Old Rockside Road bridge to access the station in Independence. On the facts of this particular case, utility of the bridge and utility of the road cannot be separated, and we read the lower courts' findings that the Old Rockside Road bridge is a bridge of general and public utility as a determination that Old Rockside Road is a road of general and public utility.

*Standard of Review*

{¶ 13} In an R.C. 2506.01 administrative appeal, the common pleas court considers the whole record and determines whether the administrative order is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04. *See also Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). The court weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board. *Dudukovich v. Lorain Metro. Housing Auth.*, 58

Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). If it does not, the court may reverse, vacate, or modify the administrative decision. *Id.*; R.C. 2506.04.

{¶ 14} The court of appeals' standard of review under R.C. Chapter 2506 is more limited. *Henley* at 147, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence. *Id.* at 147, quoting *Kisil* at 34, fn. 4. Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion. *Kisil* at 34, fn. 4. The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Id.* at 34.

{¶ 15} Here, the common pleas court concluded that the board's decision—that Old Rockside Road is not a road of general and public utility—was unreasonable and arbitrary. Implicit within that conclusion is a finding that the preponderance of reliable, probative, and substantial evidence does not support the board's decision. The court of appeals cited the appropriate standard of review and affirmed, concluding that a preponderance of reliable, probative, and substantial evidence supports the trial court's judgment.

*Analysis*

{¶ 16} Neither the county's vacation of Old Rockside Road nor Independence's responsibility for maintaining the road is determinative of whether the county or the city is responsible for maintaining and repairing the Old Rockside Road bridge. Any county responsibility for the bridge would arise from R.C. 5591.02 or 5591.21, neither of which limits a county's duty to bridges located upon county roads or upon roads for which the county bears maintenance responsibility. Rather, both statutes extend county responsibility to necessary bridges located on improved, non-county roads that are of general and public

utility. The central question in this case is, therefore, whether Old Rockside Road is a road of general and public utility.

{¶ 17} The Ohio attorney general has opined that "[t]he determination of whether a particular road is an improved road of general and public utility is a question of fact to be determined in the first instance by the county commissioners." 1990 Ohio Atty.Gen.Ops. No. 90-079, at paragraph three of the syllabus. Nevertheless, the county argues that because the facts before the board were undisputed, whether this road is of general and public utility is strictly a legal determination.

{¶ 18} The county relies on a statement in *Henley*, 90 Ohio St.3d at 148, 735 N.E.2d 433, quoting *Black's Law Dictionary* 1260 (7th Ed.1999), that application of a zoning ordinance to the facts "is a 'question of law'—'[a]n issue to be decided by the judge, concerning the application or interpretation of the law.' " *See also Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 466, 639 N.E.2d 425 (1994) (holding that whether a facility was an improvement to real property under R.C. 2305.131 was a question of law when the facts were undisputed). Statutory interpretation presents a question of law. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6. The necessity of considering the facts or the evidence to determine whether a legislative act applies to a particular case does not turn the issue of statutory interpretation into a question of fact. *Henley* at 148.

{¶ 19} Here, the meaning of "improved road of general and public utility" is a question of law, but the question of whether Old Rockside Road qualifies under that statutory term requires a consideration of the underlying facts and circumstances regarding the use of the road. Regardless of whether that ultimate question is one of fact or one of law, the court of appeals appropriately considered whether, as a matter of law, the trial court properly reversed the board's decision

on the grounds that it was not supported by reliable, probative, and substantial evidence.

**{¶ 20}** Statutory provisions analogous to R.C. 5591.02 and 5591.21 have been part of Ohio law for over 100 years. For example, in *Piqua v. Geist*, 59 Ohio St. 163, 164, 52 N.E. 124 (1898), this court applied a statute that required county commissioners to " 'construct and keep in repair all necessary bridges over streams and public canals *on all state and county roads, free turnpikes, improved roads, abandoned turnpikes and plank roads in common public use*.' " (Emphasis sic.) *Id.*, quoting R.S. 860. *See also Interurban Ry. & Terminal Co. v. Cincinnati,* 94 Ohio St. 269, 114 N.E. 258 (1916) (applying similar subsequent statutes).

**{¶ 21}** Neither *Piqua* nor *Interurban Ry. & Terminal Co.* aids the county's cause. Although the *Piqua* syllabus suggests that county commissioners are not required to construct and keep in repair bridges on streets established by a city or village for the use and convenience of the municipality that are not part of a state or county road, the opinion does not so extensively limit a county's responsibility. Rather, this court stated that the county's statutory responsibility extended to all types of roads enumerated in R.S. 860, including improved roads in common public use. *Id.* at 164 ("The phrase 'all bridges,' employed in [R.S. 860], simply relates to and includes all the necessary bridges over streams and public canals, on all state and county roads, *etc., first enumerated in the section*, being the bridges that it is the general duty of county commissioners to construct and keep in repair" [emphasis added]). Because the street in *Piqua* did not fall within R.S. 860—the street was laid out and established for the use of the city municipality only—the city was responsible for the maintenance and repair of the bridge on that road.

**{¶ 22}** *Interurban Ry. & Terminal Co.* essentially asked whether the city of Cincinnati's annexation of land affected Hamilton County's statutory duty to

8

maintain and repair a bridge located within the annexed land. A franchise from the Hamilton County commissioners to Interurban Railway and Terminal Company's predecessor required Interurban's predecessor to maintain, repair, and rebuild the bridge during the contract term, under the direction of the county engineer and commissioners, whenever the commissioners deemed it necessary.

{¶ 23} Cincinnati claimed that it succeeded to the county commissioners' right to enforce Interurban's obligation to repair the bridge, but this court held that the annexation did not affect the county's preexisting obligation. This court concluded that the county's statutory duty to construct and maintain the bridge remained unchanged even though, after annexation, the bridge was located within the municipal boundaries and formed part of a city street. *Id.* at 276-278.

{¶ 24} Neither *Piqua* nor *Interurban Ry. & Terminal Co.* speaks to the meaning of an improved road of general and public utility. The Revised Code does not define the phrase "general and public utility," but we read those words in context, according to the rules of grammar and common usage. R.C. 1.42; *Slingluff v. Weaver*, 66 Ohio St. 621, 627, 64 N.E. 574 (1902) ("Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced constructions * * *").

{¶ 25} "The phrase 'of general and public utility * * *' has long been construed as creating a distinction based on the type of traffic using the street on which the bridge is located." 1990 Ohio Atty.Gen.Ops. No. 90-079, *2. A county's obligation to maintain bridges on roads running into and through municipal corporations is related to the general, as distinguished from the local, use of those bridges. *Dumford*, 22 Ohio App.2d at 77, 258 N.E.2d 261; *State ex rel. Moraine v. Montgomery Cty. Bd. of Commrs.*, 2d Dist. Montgomery No. 10033, 1987 WL 6638 (Feb. 12, 1987) (describing the purpose of R.C. 5591.02

and 5591.21 as placing responsibility for bridge maintenance upon a city where the bridge on a city street is "meant to facilitate local traffic primarily").

{¶ 26} Rather than focusing on the specific facts of this case as a basis for determining whether Old Rockside Road is an improved road of general and public utility, the county makes sweeping generalizations in an attempt to exclude categories of roads from that designation. For example, the county generalizes that dead-end roads rarely, if ever, qualify as roads of general and public utility. But the county offers no rationale for that assertion beyond its bare belief that traffic on a dead-end road is necessarily local, as opposed to general. In support of its general assertion, the county maintains that inclusion of dead-end roads as roads of general and public utility would impermissibly render the phrase "of general and public utility" meaningless. While courts should, of course, not read a statute in a manner that renders any part superfluous, *see State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917), a factual, case-by-case determination whether a dead-end road is of general and public utility pays heed to the statutory requirement without rendering any part of the statute superfluous. As with any other street or road, whether a particular dead-end road serves a general and public utility must be determined on a case-by-case basis upon the particular facts of each case.

{¶ 27} The county also generally asserts that bridges to isolated business enclaves are not "necessary" bridges under R.C. 5591.02 and 5591.21, but that assertion is specious. As the county notes, "necessary" describes something "essential, indispensable, or absolutely required." *In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 28, citing *Webster's Third New International Dictionary* 1510-1511 (1986). But the county's assertion that bridges are "necessary" only when "situated on roads which are essential to getting Ohioans from one end of town to the other" is not supported by either the statutory language itself or the common meaning of the

term "necessary." The Old Rockside Road bridge is necessary, inasmuch as it is essential, indispensable, and absolutely required to access the portion of Old Rockside Road in Independence, the businesses located off Old Rockside Road in Independence, the two municipal streets with which it connects in Independence, and the Rockside Station of the Cuyahoga Valley Scenic Railroad.

{¶ 28} Finally, the county argues that judicial estoppel precludes Independence from arguing that Old Rockside Road is a road of general and public utility. The county bases this argument on Independence's alleged representation in a grant application to the Northeast Ohio Areawide Coordinating Agency ("NOACA") that Independence was the sponsor for an approved project to repair the Old Rockside Road bridge. The county claims that Independence's representation should preclude Independence from inconsistently arguing that the county is responsible for repairing the Old Rockside Road bridge.

{¶ 29} Judicial estoppel precludes a party from taking a position inconsistent with a position that it successfully and unequivocally asserted in a prior judicial proceeding. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. It applies only when a party demonstrates that an opposing party took a contrary position under oath in a prior proceeding and that the court accepted the prior position. *Id.*, quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998). Even then, judicial estoppel is an equitable doctrine that a court may invoke at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990).

{¶ 30} The county's judicial-estoppel argument fails here for several reasons. First, the county raises that argument for the first time in this court, even though an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts or administrative proceedings. *Greer-Burger* at ¶ 30. Here, according to the county, the factual basis for its judicial-

estoppel argument—Independence's NOACA application—occurred in February 2013, while this case was pending in the Eighth District, but the county did not raise the issue of estoppel in that court.

{¶ 31} Second, even were we inclined to consider the county's argument, the record contains no evidence of the grant application to NOACA containing Independence's alleged inconsistent position. Although the County Engineers Association of Ohio, as amicus curiae, has attached Independence's NOACA application to its amicus brief, the application was not filed in any prior proceeding in this case and is therefore not properly part of the record before this court.

{¶ 32} Furthermore, the county does not rely on, nor does the record reflect, a contrary position taken by Independence in either this or any prior judicial proceeding. In determining whether to invoke judicial estoppel, courts often consider whether the party to be estopped has persuaded a court to accept the party's earlier position, so that subsequent acceptance of an inconsistent position would create the risk of inconsistent court determinations. *New Hampshire* at 750, quoting *United States of Am. for the use of Am. Bank v. C.I.T. Constr. Inc. of Texas*, 944 F.2d 253, 259 (5th Cir.1991). Throughout the four-year history of these proceedings, Independence's position has consistently been that Old Rockside Road is an improved road of general and public utility and that the county is, therefore, responsible for the maintenance and repair of the bridge located on it. Because Independence has not presented a contrary argument to any court, let alone succeeded on a contrary argument, there is no risk of inconsistent judicial determinations on this issue. Moreover, the availability of funding to Independence, should it be found responsible for repairing the Old Rockside Road bridge, does not prejudice the county's ability to defend against liability. In light of the county's successive and ongoing appeals, as well as its refusal to comply with the common pleas court's judgment, Independence's

application for funding does not preclude Independence from defending the position upon which it prevailed in the common pleas court and the court of appeals.

{¶ 33} Turning now from the county's general arguments to the specific facts of this case, we reiterate the limitation upon appellate review in this matter: like the court of appeals, we decline to reweigh the evidence. Our only concern is whether, as a matter of law, the preponderance of the reliable, probative, and substantial evidence supports a conclusion contrary to the trial court's determination that the road is one of general and public utility.

{¶ 34} The evidence regarding Old Rockside Road and the traffic that uses it is undisputed. The Old Rockside Road bridge provides the only means for accessing the portion of Old Rockside Road in Independence, the two streets to which Old Rockside Road connects in Independence, and the businesses and facilities located off those roads. Additionally, the road and bridge provide access to the Cuyahoga Valley National Park and the only motor-vehicle access to the Cuyahoga Valley Scenic Railroad's Rockside Station.

{¶ 35} Multiple businesses rely on Old Rockside Road and the Old Rockside Road bridge as the sole means of access to their facilities. Those businesses serve many customers outside of Independence—some serve national and international customers—and they would be cut off from any roads without the Old Rockside Road bridge.

{¶ 36} The county attempts to minimize the amount of traffic using Old Rockside Road in comparison with the traffic using new Rockside Road, but a two-day traffic study conducted by the county engineer's office in early November 2010 showed that 1,666 vehicles used the Old Rockside Road bridge one day and 1,780 vehicles used the bridge the other day. (The county maintains that those numbers must be halved because every vehicle that crosses the bridge into Independence must also cross the bridge to leave.) While those numbers are

significantly less than the number of vehicles that used the new Rockside Road during the study period, they cannot be dismissed outright as mere local traffic primarily for the use and benefit of Independence.

{¶ 37} In addition to the traffic study, the record contains evidence that during 2010, approximately 75,000 passengers from across the state of Ohio and the United States used the road and the bridge to reach the Cuyahoga Valley Scenic Railroad at the Rockside Road Station. Further, ALL Erection & Crane Rental Corporation, one of the businesses located off Old Rockside Road in Independence, uses the road and bridge to transport a large local fleet of vehicles and equipment to national and international rental customers. The company's dispatch department conservatively estimates that bridge crossings by the company's employees, customers, and suppliers reach 40,000 to 50,000 per year.

{¶ 38} Based on the evidence in the record, the court of appeals could not have concluded, as a matter of law, that a preponderance of reliable, probative, and substantial evidence did not support the trial court's conclusion that Old Rockside Road is an improved road of general and public utility.

*Conclusion*

{¶ 39} Unless the court of appeals found, as a matter of law, that a preponderance of reliable, probative, and substantial evidence did not support the common pleas court's reversal of the board's decision, it was bound to affirm. *Dudukovich*, 58 Ohio St.2d at 207-208, 389 N.E.2d 1113. The evidence does not demonstrate, as a matter of law, that Old Rockside Road lacks general and public utility. Rather, a preponderance of reliable, probative, and substantial evidence supports the determination that Old Rockside Road and the Old Rockside Road bridge facilitate general, as opposed to primarily local, traffic and that Old Rockside Road is, therefore, a road of general and public utility. Accordingly, we affirm the court of appeals' judgment.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents.

_____

**O'DONNELL, J., dissenting.**

{¶ 40} Respectfully, I dissent.

{¶ 41} This case concerns whether Cuyahoga County should bear the cost to repair the Old Rockside Road Bridge, which is located on Old Rockside Road, formerly a county road that the county vacated in 1967.

{¶ 42} In my view, based on the facts of this case, Cuyahoga County should not be required to pay for repairs to the bridge.

*Facts and Procedural History*

{¶ 43} On June 22, 1967, the Board of County Commissioners of Cuyahoga County vacated Old Rockside Road as a county road and adopted the county engineer's recommendation to leave the roadway as a *municipal* street. Independence has admitted that it has borne the responsibility for maintaining that road since the county vacated it.

{¶ 44} On December 2, 2010, upon the request of the Cuyahoga County prosecutor, the board adopted a resolution determining that "Old Rockside Road, located in the City of Independence and Village of Valley View, is not a road of general and public utility * * * as that term is used in Ohio Revised Code Sections 5591.03 and 5591.21."

{¶ 45} The city of Independence appealed that decision to the Cuyahoga County Court of Common Pleas, and that court reversed the board's decision, stating:

The court reviewed the briefs and the record and finds that the decision of the Cuyahoga County Board of Commissioners was

unreasonable and arbitrary [and] therefore reverses the board's decision.  The Old Rockside Road Bridge is found to be a *bridge* of "general and public utility" as it lies between the two municipalities and is therefore not within the municipal corporation as required by O.R.C. 723.01 and O.R.C. 5591.  The court finds that Cuyahoga County is responsible for the repair and maintenance of the Old Rockside Road Bridge.

(Emphasis added.)

{¶ 46} The board and Cuyahoga County appealed to the Eighth District Court of Appeals, which affirmed the judgment of the court of common pleas. 8th Dist. Cuyahoga No. 97167, 2013-Ohio-1336, ¶ 37.  The Office of the Cuyahoga County Executive, the board's successor, appealed to this court, and we granted discretionary review.  136 Ohio St.3d 1509, 2013-Ohio-4657, 995 N.E.2d 1212.

*Law and Analysis*

{¶ 47} R.C. 723.01 requires that a municipal corporation, i.e., a city or village, *see* R.C. 703.01(A), have the care, supervision, and control of bridges within its municipal boundaries.  *See* R.C. 723.01 ("Except as provided in section 5501.49 of the Revised Code [bridges on a state highway in a municipal corporation], the legislative authority of a municipal corporation shall have the care, supervision, and control of the * * * bridges * * * within the municipal corporation").

{¶ 48} By way of comparison, R.C. 5591.02 requires a board of county commissioners to "construct and keep in repair all necessary bridges in municipal corporations on all county roads and improved roads that are of general and public utility, running into or through the municipal corporations, and that are not on state highways."  And, pursuant to R.C. 5591.21, subject to an exception not

16

relevant here, a board of county commissioners also is required to "construct and keep in repair necessary bridges over streams and public canals on or connecting state, county, and improved roads."

**{¶ 49}** The issue before the common pleas court focused on the board's determination that Old Rockside Road—not Old Rockside Road Bridge—is not a road of general and public utility. However, the court rendered judgment regarding the bridge, not the road. It therefore abused its discretion. *See Doe v. Natl. Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir.1999) ("A court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts").

**{¶ 50}** The court of appeals also misidentified the pertinent issue when it stated that the "issue in this case * * * is whether the trial court's decision that the *bridge* is one of general and public utility is supported by a preponderance of reliable, probative, and substantial evidence." (Emphasis added.) 2013-Ohio-1336, ¶ 14.

**{¶ 51}** In *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), we stated that in an appeal pursuant to R.C. 2506.04, such an appeal "requires [the court of appeals] to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." We also stated,

> [R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court.

Within the ambit of "questions of law" for appellate court review would be abuse of discretion by the common pleas court.

*Id.* at fn. 4.

{¶ 52} In this case, a preponderance of reliable, probative, and substantial evidence supports the board's decision that Old Rockside Road is not a road of general and public utility. *See Webster's Third New International Dictionary* 944 (1993) (defining "general" as "applicable or relevant to the whole rather than to a limited part, group, or section"); *Black's Law Dictionary* 1422, 1779 (10th Ed.2014) (defining "public" as "[o]pen or available for all to use, share, or enjoy" and "utility" as the "quality of serving some function that benefits society; meritoriousness").

{¶ 53} Specifically, the record discloses that in 1967, in support of a recommendation to vacate Old Rockside Road, the chief deputy to the county engineer informed the board that "[s]ubsequent to the relocation of Rockside Road * * * it has been determined that the portion of Old Rockside Road between the above captioned limits is no longer an essential part of the County-wide road network nor is it anticipated that this section of the old road will be included in any plans in the foreseeable future."

{¶ 54} The record further discloses that the results of an August 2010 traffic study of Old Rockside Bridge showed that the total two-way traffic that went over the bridge in a 24-hour period consisted of 1,666 vehicles on the first day and 1,780 vehicles on the second day, while the average daily traffic on the new Rockside Road Bridge was 24,300 vehicles.

{¶ 55} While the area near Old Rockside Road may have changed since 1967 and Old Rockside Road may be important to businesses that abut that roadway and that are located on streets that connect with it, these business

constitute a limited part, group, or section when compared with the whole of the local surrounding area.

{¶ 56} Thus, the board's determination that Old Rockside Road is not a road of general and public utility is supported by the record.

{¶ 57} Notably, the board in its 2010 resolution did not render any decision regarding Old Rockside Road Bridge. Therefore, the issue of responsibility for repairs to the bridge is not properly before this court.

{¶ 58} Accordingly, I would reverse the judgment of the court of appeals and uphold the decision of the Board of County Commissioners that Old Rockside Road is not a road of general and public utility.

––––––––––––––––––––

Taft, Stettinius & Hollister, L.L.P., and Gregory J. O'Brien, Independence Law Director, and Thomas J. Lee and Jennifer Orr, for appellee.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Brian R. Gutkoski and David G. Lambert, Assistant Prosecuting Attorneys, for appellant.

Thomas L. Sherman, urging reversal for amicus curiae, County Engineers Association of Ohio.

––––––––––––––––––––––––