[Cite as *Satya Hospitality Corp., L.L.C. v. Englewood*, 2018-Ohio-425.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY


SATYA HOSPITALITY CORP., LLC          :
                                       :
    Plaintiff-Appellant               :          C.A. CASE NO. 27541
                                       :
v.                                     :          T.C. NO. 2016-CV-4735
                                       :
CITY OF ENGLEWOOD, OHIO, et al.        :          (Civil Appeal from
                                       :           Common Pleas Court)
    Defendants-Appellees              :
                                       :

    . . . . . . . . . . .

## O P I N I O N

Rendered on the 2nd day of February, 2018.

    . . . . . . . . . .

MATTHEW C. SORG, Atty. Reg. No. 0062971 and MICHELLE T. SUNDGAARD, Atty. Reg. No. 0096006, Pickrel, Schaeffer & Ebeling, Co., 2700 Kettering Tower, Dayton, Ohio 45423
    Attorneys for Plaintiff-Appellant

MICHAEL P. McNAMEE, Atty. Reg. No. 0043861 and CYNTHIA P. McNAMEE, Atty. Reg. No. 0056217 and GREGORY B. O'CONNOR, Atty. Reg. No. 0077901, McNamee & McNamee, PLL, 2625 Commons Boulevard, Beavercreek, Ohio 45431
    Attorneys for Defendants-Appellees

    . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}   This matter is before the Court on the April 13, 2017 Notice of Appeal filed by Satya Hospitality Corporation ("Satya").   Satya operates the Red Carpet Inn (the "Inn") at 15 Rockridge Road in Englewood, and it appeals from the trial court's March 29, 2017 "Decision, Order and Entry Affirming in part and Vacating in part the Decision of the City of Englewood, Ohio Property Maintenance Hearing Board [('the Board')]."   The Board determined that the Inn constituted an unabated public nuisance due to multiple violations of the Englewood Codified Ordinances ("ECO") on the property, and it ordered demolition of the Inn.   We hereby affirm the judgment of the trial court.

{¶ 2} The   record   reflects   that   on   November   5,   2015,   Englewood   Code Enforcement Officer Emily Meyers issued a "Notice of Zoning Violation" to Satya for a violation of ECO section 1454.04(h).   The Notice identifies the following violations: "Peeling/missing paint on building, missing/damaged railing(s), rotting wood/material, and high grass and weeds on property."   The Notice provides: "You must take the following actions in order to abate the nuisance: Paint building, fix/repair railing(s), fix/replace any rotting wood/material, and remove any high weeds and grass on property."   A "Second Notice/ Notice of Zoning Violation" was issued by Myers to Satya on November 13, 2015 for a violation of ECO section 1454.04(g), identifying the same violations and ordering the same actions to abate the nuisance.   The second notice provides:

You have five (5) calendar days from your receipt of this notice to

take one of the following actions: 1) Fully and completely abate the nuisance

as set forth above; 2) work out a schedule, satisfactory to the City, for the

nuisance abatement, with sufficient surety acceptable to the City to guarantee completion on the schedule; or 3) appeal the determination of the existence of the nuisance and/or the remedy required to the Englewood Property Maintenance Board.

{¶ 3} On December 16, 2015, Myers issued a "Notice of Zoning Violation" to Satya for a violation of ECO section 1454.04(h), citing the following violations: "Damaged trash/dumpster enclosure and damaged fence," and ordering repair. A second notice, citing ECO section 1454.04(h), was issued by Myers on December 22, 2015, with a provision of five days to take one of the above actions.

{¶ 4} On January 13, 2016, a "Final Notice/ Notice of Zoning Violation" was issued by Myers to Satya, citing a violation of ECO section 1454.04(h) and identifying "[d]amaged trash/dumpster enclosure and damaged fence" and ordering repair. Myers issued a "Notice of Zoning Violation" to Satya on January 27, 2016 for a violation of ECO section 1454.04(h), citing "[t]rash and debris around property." Myers issued a second notice to Satya on February 24, 2016 for a violation of ECO 1454.04(h). On February 26, 2016, Myers issued a final notice to Satya for violations of ECO 1454.04(h) and "article 1282.05." The final notice listed the following specific violations: "Trash and debris around property, missing/peeling paint, missing handrails, rotting/deteriorating wood, illegal banner, damaged dumpster enclosure, and damaged fence."

{¶ 5} On June 21, 2016, Housing Officer William Singer issued a "Final Notice/ Property Maintenance Code Violation" to Satya, citing violations of ECO "Chapters 1454.04, 1454.05, and 1454.13" and listing the following specific violations:

Rotting and deteriorating wood/material on building creating

damaged and unsafe stairways, insect infestation, trash and debris on property, sagging soffits, peeling/missing paint, mold in guest rooms, damaged vents, damaged porch support, impaired fascia board, damaged downspouts, unsecured electrical fixtures, and broken sidewalks.

**{¶ 6}** The final notice further provides:

You must take the following actions in order to abate the nuisance: Replace all stairways, new stairways must be built to Ohio Building Code requirements, remove insect infestations, repair rotting and deteriorating wood, remove all trash and debris, repair soffits, repaint building, remove mold from building, repair vents, repair damaged support structures, repair fascia board, repair/replace downspouts, repair electrical fixtures and broken sidewalks.

You have five (5) calendar days from receipt of this notice to take one of the following actions: fully and completely abate the nuisance described above; work out a schedule, satisfactory to the City, for the nuisance abatement, with sufficient surety acceptable to the City to guarantee completion on schedule; or appeal this determination to the City's Property Maintenance Hearing Board * * *. If you fail to take one of these actions you will be subject to the penalty as provided by the Englewood Property Maintenance Code.

If you wish to appeal this violation you must file an appeal with the Englewood Property Maintenance Board at 333 West National Road, Englewood Ohio, within five (5) days of the date of this letter.

* * *

**{¶ 7}** On July 1, 2016, Singer issued a "Notice of Property Maintenance Code Violations for the Property Located at 15 Rockridge Drive, also identified by Parcel Identification Number M57 00501 0024 (the 'Property') and Consequent Order for Demolition of the Buildings." ("Demolition Notice"). The Demolition Notice provides:

* * *

The purpose of this letter is to inform all interested parties that current deficiencies with the Property are in direct violation of Sections 1454.04 and 1454.05 of the Englewood Property Maintenance Code. Specifically, you are hereby advised that the Property constitutes an unabated public nuisance due to the following conditions:

- Rotting and deteriorating wood
- Damaged and unsafe stairways
- Rooms inaccessible due to unsafe stairways
- Insect infestation
- Public Health violations
- Trash and debris on property
- Sagging soffits
- Peeling/missing paint
- Mold in guest rooms
- Damaged vents
- Damaged porch support
- Impaired fascia board
- Damaged downspouts
- Unsecured electrical fixtures
- Broken sidewalks

All interested parties have thirty (30) days from the date of the official notice to fully and completely abate the above described nuisance conditions * * *. Failure to completely abate the described nuisance conditions may result in the City's demolition of the building, the cost of

which will be added to the real property tax bill for the Property.

This is an order calling for demolition. All interested parties are automatically entitled to an adjudicatory hearing under Section 1454.09(b) of the Englewood Property Maintenance Code. * * *

{¶ 8} The Demolition Notice provided that a hearing was scheduled for August 11, 2016, and that "all interested parties will be provided with an opportunity to present any evidence they desire in order to support the position they decide to take. Interested parties have a right to be represented by an attorney, although such is not necessary in order for them to participate in the hearing."

{¶ 9} At the hearing, Bill Singer testified that the Inn was originally built in 1992, and that it contains two stories and 48 rooms. He stated that the "property is in a state of disrepair; it has numerous violations including those identified * * * by the Fire Department, Montgomery County Health Department, and Englewood Code Enforcement. In addition, numerous calls to the Englewood Police Department for services including felony-related activities."

{¶ 10} Singer testified as follows while presenting photographs of the Inn:

* * * There was some damaged stairs. * * * Exterior stairs to get to the second floor, they were damaged. They went through the process of repairing them, however, still half the building is inaccessible because of the damage to those stairs.

Peeling paint. Broken sidewalks. Missing, damaged siding. Overgrown bushes and trees. The dumpster enclosure needs repaired. Junk and debris on [the] property.

Mold in the rooms. Bedbugs as identified on reports issued by the Montgomery County Health Department. Electrical covers are missing.

Leaky faucets and sinks. Loose, damaged handrails. Bathroom ceilings damaged. And the holes in the walls.

* * *

The exterior of the * * * hotel, as you see here. Here are some of the, the stairwell issues. This was the previous stairwell. This was taken right before the notice was issued July 1st, so end of June these photographs were taken showing the stairwells.

As you can see, the peeling paint over on the right-hand side. You see the damaged concrete. Mold, that's in one of the rooms. Trash and debris.

If you go fast forward one month, they've replaced the stairs, however, they were improperly replaced. The * * * Building Department had issued a no access to the second floor at an inspection that was taken place on August the 5th, so also have documentation from the Building Department that will be added into the record.

This is, as I said, still from August the 3rd. You can see the debris. Here's another photograph of that same area from just before the notice was issued July 1st. This is August 3rd, so about a month later, same situation, nothing has been done

So just to go to show the progress I guess you would say that they have not made on what I would consider to be some minor issues.

The boards clearly could have been painted, replaced. That will lead to additional mold, additional decay of the building. That is the first offense in property maintenance is the paint, and after that is gone the building is then open to water and other, other items. Concrete, there again.

My conclusion: This property violates several sections of the Property Maintenance Code; is a blighting influence on the surrounding properties and the City as a whole.

My recommendation is that we affirm the decision to demolish the building as outlined in the July 1st notice that was sent to the property owners.

{¶ 11} Singer presented a "Staff Report" authored by him regarding the property dated August 11, 2016, which provides in part:

* * *

The property is in a current state of disrepair, with numerous violations issued from the city's Code Enforcement, Fire Department and the County Health Department. The issues are not merely cosmetic as evidenced first by the letter from the Englewood Fire Chief (enclosed) expressing his concern for public safety due to the current condition of the building. Second the condition of the property has also cultivated an assemblage of residents who are exhausting police resources by generating a large number of police calls which are outlined in the documentation provided by the

Englewood Police Chief. And third, violations were noted by the Montgomery County Health Department for insects, loose hand rails and bird droppings among numerous other issues as outlined in the enclosed report[] dated June 20, 2016.

**{¶ 12}** Singer also presented a copy of the July 1, 2016 Demolition Notice and its corresponding return of service; copies of June 28, 2016 exterior photographs of the property reflecting debris, peeling paint, broken sidewalks, fascia board, damaged stairway, unsecured electric box, trash and debris, and a damaged dumpster fence, and an interior photograph of mold in a guest room; copies of August 2, 2016 photographs of the damaged dumpster fence, a "repaired" stairway, broken concrete, and peeling paint; copies of the violation notices issued to Satya; a copy of a June 21, 2016 "Fire Inspection Report" Singer received indicating that the "N.W. stairway is unsafe due to rusted fasteners. Until repaired do not use or rent any rooms on the North ½ of the west second floor"; a June 22, 2016 email Singer received from Scott Young, Chief Building Inspector, who inspected the Inn on June 1, 2016 and recommended that the stairs be closed to public use; a June 20, 2016 Health Department Report Singer received noting numerous exterior and interior violations at the Inn, as well as a May 18, 2016 Health Department Report. Regarding the stairway issue, Singer further testified that "[p]ermits were issued and * * * the stairwell was not built to * * * the building code requirements, did not pass inspection."

**{¶ 13}** The following exchange occurred regarding additional exhibits:

Q. Then this is an additional notice, I believe, that, Bill, we had talked about?

A.   As a supplement to that there's two additional notices from the Montgomery County Health Department.

* * *

A.   Yeah, there's two additional reports from the Public Health, Montgomery County Public Health, on July 20th and July 6th.

* * *

A.   Both of those identified additional violations that existed at the property including bed bugs and other items as identified.

Q.   And, for example, on the first page of this exhibit, the following rooms have been blocked at this time: 105, 110, 117; it lists approximately ten different rooms there that have been blocked, right?

A.   Correct.

Q.   And then we've got bed bugs in rooms 205 and 117 as well, correct?

A.   Correct.

Q.   And to your knowledge, none of those violations have been addressed as the board sits here today, is that correct?

A.   Correct.

Q.   * * * Then the next exhibit we have from the building Inspection Department, Bill, can you just briefly review that for the board?

A.   Yes.   This item * * * would be a report issued August the 5th. This is actually in follow-up to a visual inspection at the property by the building inspector.   Our commercial building inspector is National

Inspection Corporation, we hired an outside firm to do that, they are certified for commercial properties.

The stairwells as identified and previously shown on the photos where the repairs were made, that, that had failed. So that is a document that I'm providing you, showing him issuing this with saying here would be no, no occupancy to the second floor until it's completed per code requirements and reinspected.

{¶ 14} At this point in the course of Singer's testimony, Rajesh Patel appeared without counsel and identified himself on the record as "a manager and working partner for Red Carpet Inn."

{¶ 15} The following exchange occurred when Singer continued his testimony:

MR. KLINE: The Code violations, in your estimation were all the code specifications that they were in violation of, they knew what the codes were on the stairs, that was communicated to them?

MR. SINGER: I would assume that the contractors that were hired dealt with similar situations in the past.

They were issued a permit from National Inspection Corporation identifying the stairs were to be built per the building code requirements.

I am not a building code, certified building inspector or have a lot of knowledge of the commercial building - -

MR. KLINE: But they were made aware that it had to be to code?

MR. SINGER: They absolutely knew it had to be to code; they were issued a permit that stated that.

\* \* \*

MR. SINGER:   So, yes, they should have known what that code was and that the stairwell needed to be built to that code.

\* \* \*

MAYOR BURNSIDE: This is not the City of Englewood's building code?

MR. SINGER:   Ohio - - I believe it's the Ohio Basic Building Code.

MR. MCNAMEE:   Ohio Basic Building Code.

\* \* \*

MR. SINGER:   Yeah.

MR. MCNAMEE:   For commercial properties.

\* \* \*

MR. SINGER:   The City of Englewood contracts with National Inspection Corporation to do commercial building inspections, so that's who we utilize on their expertise for commercial and then they would follow that Ohio Basic Building Code.

\* \* \*

MR. MCNAMEE:   Councilman Kline, just for further clarification, too, it's always the responsibility of the property owner - - to be cognizant of what the code requirements are. \* \* \*

**{¶ 16}** Singer then presented "police incident reports over the last 12 months" at the Inn as well as a July 29, 2016 email from Sergeant Lang to the Chief of Police regarding suspected prostitution at the Inn.   Finally, Singer presented a copy of the ECO.

**{¶ 17}** Patel declined to cross examine Singer. The following exchange occurred:

MR. MCNAMEE: Go ahead.

MR. RAJESH PATEL: They already approved the stairways from the company, building inspection, and everything is good.

MR. MCNAMEE:   What do you have to show the board?

MR. RAJESH PATEL:   We, we cleaned up garbage, worked at holes on walls, inside the rooms, all the maintenance are done.   And we hired a contractor, he's still working more on that.

MR. MCNAMEE:   * * * So you wish to present this to the board, correct?

MR. RAJESH PATEL:   Yeah.

MR. MCNAMEE:   * * * What else would you like to say or present?

MR. RAJESH PATEL:   We done all the maintenance, whatever the City wants or require, we done all of them.

* * *

MR. MCNAMEE:   * * * I have a couple questions for you then, I'm going to cross-examine you.

CROSS EXAMINATION

BY MR. MCNAMEE:

Q.   The only exhibit you've handed us is a building inspection worksheet dated August 11, 2016.   Would you hand this to Tina and ask her to mark that as Exhibit 1, then hand it back to me.

* * *

BY MR. MCNAMEE: I'm looking at what's been marked as Exhibit 1, and I'm noting there's columns where it says final inspection, names the inspector and inspection type, and then there's a column that says approved, and then final. And under each item here it says no, not approved, not approved, not approved, not approved. So we've got four inspections, none of them were approved. So do you have anything else which would indicate that the building inspection has been approved? Do you have anything else?

A. No, he says - - he just left at 3:00 and he says that everything will be passed, you can open your stairway. And I talked to him, he'll let me talk to City, and he says no - -

Q. Whose handwriting is that, sir?

* * *

A. That's that guy from the company that give us letter.

Q. That guy, what's his name?

A. City send that company. NCI.

Q. * * * Anything else you would like to say regarding my questioning to you?

A. No.

{¶ 18} On August 24, 2016, the Board unanimously affirmed Singer's decision as set forth in the July 1, 2016 Demolition Notice. Satya filed a "Notice of Administrative Appeal and Request for Stay" in the trial court on September 14, 2016, and on September 26, 2016, the trial court granted the request for stay.

{¶ 19} Satya argued to the trial court that this "case can essentially be classified as a quintessential evidence rule 404(B) matter, in which the Decision of the Board is reflective of a general dissatisfaction by the Appellees with the Appellant, but which is not based on reliable, probative, or substantial evidence sufficient to support a finding that Appellant's structure should be demolished." Satya asserted that the Notices sent to it "do not specify which sections of section [1454.04] (h) Appellant is in violation. * * * Section 1454.04(h) includes sixteen (16) sections, some including subsections. Neither Singer nor the Board submitted the exact violations to Appellant."

{¶ 20} In its first assignment of error, Satya asserted that the "Board's Decision violated Appellant's procedural due process as no notice of specific violations was provided during the hearing or in the Decision." According to Satya, it "could not properly be notified and could not properly be heard without knowledge of the alleged violations."

{¶ 21} In its second assignment of error, Satya asserted that the "Decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the evidence presented at the hearing." Satya asserted that there "was no testimony or physical evidence to suggest that there was rotting and deteriorating wood at the Red Carpet Inn."

{¶ 22} Regarding the stairways and inaccessible rooms, Satya asserted as follows:

William Singer testified to the damaged stairways, which deemed [sic] the second floor rooms inaccessible. He testified that on June 28, 2016, the stairways were unsafe. However, on the picture from August 2,

2016, William Singer testified that the stairs were repaired without personal knowledge of their condition. Furthermore, * * * Rajesh Patel testified to the hearing board that the stairs had been repaired accordingly, and he could then reopen the second floor. * * *

Even if this Court found that the Board had sufficient evidence to find that the stairways were not fixed as of the date of the hearing, the Board provided no evidence to support that it meets the definition of "significant degree" in Section 1454.05. * * * The City of Englewood did not demonstrate a violation of either Section 1454.04 or 1454.05.

{¶ 23} Satya asserted that the "City of Englewood failed to provide sufficient evidence that Appellant was in violation of Sections 1454.04 and 1454.05 for insect infestation, any public health violations, trash and debris on property, and mold in guest rooms." According to Satya, the "evidence provided to the Board was from Public Health Human Services from June 20, 2016. * * * However, this report was for only two rooms in the Red Carpet Inn, both of which were on the second floor. * * * Rajesh Patel testified that these allegations had been fixed." Satya asserted that the City of Englewood "provided no testimony to the contrary of Rajesh Patel and the only evidence submitted was almost two months prior to the hearing."

{¶ 24} Regarding "sagging soffits, peeling/missing paint, damaged vents, porch support, downspouts, fascia board and electrical fixtures," Satya asserted that "a review of the record shows that these alleged issues were fixed at the time of the hearing. There was no evidence in front of the Hearing Board to show that the Englewood Inn is manifestly unsafe." Finally, Satya asserted that there "was no testimony or evidence

provided to the Board to support a finding that the trash and debris on the property found before the hearing on the broken sidewalks were nothing more than cosmetic issues."

**{¶ 25}** In response, Englewood asserted that "the glaring flaw in the Red Carpet Inn's procedural due process argument is that it focuses on the wrong document. The document that gave notice of the violations to the Red Carpet Inn was not the Board's decision, it was the July 1, 2016, demolition notice." According to Englewood, "the Board's decision was the result of the motel's properly protected due process rights. The document that provided the notice, and informed the motel of its opportunity to be heard, was the demolition notice."

**{¶ 26}** Regarding Satya's second assigned error, Englewood asserted that the "City's violation notices demonstrate that rotting and deteriorating wood had been a problem for nearly a year." Englewood noted that Singer testified that "the property's persistent problem with peeling and missing paint leaves the building, including the wood, exposed to the elements which in turn leads to 'additional decay of the building.' That peeling paint, and exposed wood, is seen in the pictures submitted at the hearing as well." Englewood further asserted that the "Red Carpet Inn's refusal to properly repair or replace its outdoor stairways poses an obvious safety hazard under Section 1454.05. Indeed, even after the motel attempted to fix one of them, it failed to pass inspection and the second floor rooms were required to be blocked off entirely because there was no safe means of accessing them."

**{¶ 27}** Regarding the insect infestation, public health violations, and mold in the guest rooms, Englewood argued as follows: "First, the June 20, 2016 health department report did not involve only two rooms on the second floor," and "[s]econd, the June 20,

2016 health department report was not the only evidence of those conditions in the record." Englewood asserted that "a review of the transcript reveals that Mr. Patel did not testify that these unsanitary conditions had been remedied."

{¶ 28} Regarding the sagging soffits, peeling/missing paint, damaged vents, porch supports, downspouts, fascia board and unsecured electrical fixtures, Englewood argued that the issues are not cosmetic, and that all of those conditions "implicate dilapidation that creates risks to personal health and safety." Finally, regarding trash and debris on the property and broken sidewalks, Englewood asserts that the "pictures introduced at the hearing are perhaps the best evidence" of those conditions. Englewood argued that the photographs of the dumpster area depict an area that "looks on the verge of collapse at any moment, somehow an entire mattress has been allowed to be dumped in the middle of the parking lot, and a pile of general debris and garbage sits right next to the dumpster as if it is a routine or acceptable practice."

{¶ 29} Satya filed "Appellant's Reply Brief to Appellee's Brief" on February 3, 2017. Satya asserted that the "alleged violations were never beyond repair, and even the alleged violations that Appellees submit were not cosmetic were fixable and had been fixed by Appellant."

{¶ 30} In its Decision of March 29, 2017, in addressing Satya's first assignment of error, the trial court determined that the "record demonstrates that Appellant received proper notice," based upon the Demolition Notice, "which was sent by certified and ordinary mail to Appellant, and posted on the property." The court found that the "Demolition Notice specifically identifies the violations on Appellant's property. This Demolition Notice provided Appellant 30 days to abate the violations and gave Appellant

an adjudicatory hearing on August 11, 2016, at which Rajesh Patel appeared and provided testimony on behalf of Appellant." Accordingly, the court determined that Satya's "procedural due process rights were not violated."

**{¶ 31}** Regarding Satya's second assignment of error, the court determined as follows:

Upon a review of the testimony and exhibits submitted during the hearing, the Court agrees with the Board that the evidence demonstrates that the condition of the property constitutes a nuisance within the meaning of section 1454.05 of the Englewood Property Maintenance Code. The evidence presented at the hearing substantiated the claims that the condition of the property was unacceptable and violated several provisions of the Englewood Property Maintenance Code, constituting a hazard to the health, safety, and welfare of the citizens of the City of Englewood. With respect to the Board's findings that the conditions of the property violated several provisions of Section 1454.05, the Court gives deference to the Board's resolution of evidentiary conflicts and may not substitute its judgment for that of the Board.

The Court finds that Appellant has failed to demonstrate that the property was not a nuisance, nor did it establish that it had a tangible prospect of repairing the structure within a reasonable period of time. Appellant failed to show that there was a construction schedule or concrete repair plans.

The Court finds that based upon the evidence, the Board properly

determined that the property constituted a public nuisance which required abatement, and Appellant failed to completely abate the nuisance as required by the Demolition Notice and Englewood Codified Ordinance Section 1454.09. The Court finds that the Board's Decision was not arbitrary, capricious, or unreasonable, and was supported by a preponderance of substantial, reliable, and probative evidence.

{¶ 32} Regarding the specific violations enumerated in the Demolition Notice, the court affirmed the rotting and deteriorating wood violation based upon Singer's testimony. The court affirmed the damaged and unsafe stairways and inaccessible rooms violations based upon Singer's testimony, photographs from before the Demolition Notice was sent to Satya and photos of the violations 30 days later, as well as the June 21, 2016 Fire Inspection Report by the Englewood Fire Department. The court affirmed the insect infestations, public health violations and mold in guest rooms violations based upon Singer's testimony and photographs. The court determined as follows regarding sagging soffits, peeling/missing paint, damaged vents, porch support, downspouts, fascia board, and electrical fixtures: "In this case, the Court finds the Board's finding to affirm the violations for peeling/missing paint, damaged fascia board and electrical outlets/fixtures to be reasonable and supported by a preponderance of reliable, probative and substantial evidence" based upon Singer's testimony and photographs. The court further determined as follows:

The Court find[s] Appellant's argument well-taken as to the violations for sagging soffits, damaged porch supports, damaged vents and damaged downspouts. The court finds that the Board's finding to affirm these

specific violations is not supported by a preponderance of reliable, probative or substantial evidence. There is no testimony or evidence as to these alleged violations. Further, the Department of Commerce report dated September 8, 2015, shows that the damaged vents were repaired as of May 4, 2016. The Court hereby VACATES the ruling of the City of Englewood Property Maintenance Hearing Board as to the violations for sagging soffits, damaged porch supports, damaged vents and damaged downspouts. * * *

{¶ 33} Finally, the court affirmed the violations of trash and debris on the property and broken sidewalks based upon Singer's testimony and photos of the property.

{¶ 34} Satya asserts three assignments of error herein. Its first assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE BOARD DID NOT VIOLATE APPELLANT'S PROCEDURAL DUE PROCESS BY FAILING TO CITE SPECIFIC CODE VIOLATIONS TO APPELLANT.

{¶ 35} Satya asserts that it "is unconscionable for a property owner to be expected to defend notices that only allege general violations for code sections that include a significant number of subsection of violations." According to Satya, Englewood "violated procedural due process by not giving proper notice of Appellant's alleged violations." Satya argues that "there are no specifications of the Englewood Property Maintenance Code regarding the violations alleged by the City. The notices merely cite alleged examples of an evidentiary basis for violations for demolition." Satya asserts that

the "Board's final Decision did not cite *any* violations of the code."   Satya argues that the "transcript of the record clearly shows that the absence of more specific citations has prejudiced Satya Hospitality's ability to fairly defend itself in this action." Satya asserts that the "testimony provided by Satya Hospitality, through its only witness, Rajesh Patel, sets forth its inability to adequately defend itself at this hearing because Mr. Patel could only generally argue as to the violations by attempting to portray the work that was completed at the property."   According to Satya, "Mr. Singer speculated the knowledge of code sections and Mr. McNamee clarified the answer to the Board's questions stating that Appellant must be 'cognizant' of the code requirements.   However, the constitution requires notice of the alleged violations, rather that expecting the Appellant to speculate to specific code violations."

{¶ 36} Englewood responds that "Satya's brief is unable to provide any authority whatsoever to support its claim that procedural due process requires specific code citations, let alone subsection citations, for property maintenance violations."   According to Englewood, Satya's "argument glaringly omits the fact that each notice of violations issued by Englewood, up to and including the Demolition Notice that led to the Board hearing, identified not just the code sections ECO §§ 1454.04 and 1454.05 but the ***specific property conditions that violated*** those code sections * * *," 15 in total.

{¶ 37}   We note that Satya's appeal is brought pursuant to R.C. 2506.01, " 'which permits parties to appeal the final decisions of political subdivisions that result from a quasi-judicial proceeding in which notice, a hearing, and the opportunity for the introduction of evidence have been given.' * * * *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, 969 N.E.2d 1166, ¶ 8."   *Nuwin Realty, LLC*

*v. City of Englewood, Ohio*, 2017-Ohio-480, 84 N.E.3d 346, ¶ 22. As this Court further noted in *Nuwin Realty LLC*, ¶ 22-24:

> * * * R.C. 2506.03 allows common pleas courts to "admit and consider new evidence" (which was not requested here), and to "weigh evidence on the whole record." (Citation omitted.) [*Lynch*] at ¶ 12. Nonetheless, "while an appeal under R.C. 2506.01 resembles a *de novo* proceeding, it is not *de novo*." *Id.* at ¶ 13, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 206–207, 389 N.E.2d 1113 (1979).
>
> In *Lynch*, the court stressed that "[t]here are limits to a court of common pleas review of the administrative body's decision. For example, in weighing evidence, the court may not 'blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise.' " *Id.* quoting *Dudukovich* at 207, 389 N.E.2d 1113. Furthermore, " '[i]n reviewing the administrative body's decision, a court of common pleas is authorized to determine whether the agency's decision is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.' " *Id.* at ¶ 14, quoting R.C. 2506.04. "The court will then 'affirm, reverse, vacate, or modify the order * * *, or remand' the underlying administrative decision under that standard of review specified in the statute. R.C. 2506.04. These standards that a court of common pleas must employ and the dispositions that it must reach are more limited than relief that could be awarded pursuant to a trial, and therefore, the administrative appeal is more akin to

an appeal than a trial." *Id.*

Our review is more limited than that of the common pleas court. (Citations omitted.) *Indep. v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 14. An appellate court reviews a "common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence." (Citations omitted.) *Id.* "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion. * * * The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence." *Id.*, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

**{¶ 38}** " 'Procedural due process guarantees an affected individual the right to some form of hearing, with notice and an opportunity to be heard, before that individual is divested of a protected interest.' *State v. Ward* (1999), 130 Ohio App.3d 551, 557, 720 N.E.2d 603, 607." *State v. Smith*, 2d Dist. Greene No. 99 CA 121, 2000 WL 353171, * 3 (Apr. 7, 2000).

**{¶ 39}** The July 1, 2016 Demolition Notice provided notice to Satya that it was in direct violation of ECO Sections 1454.04 and 1454.05. The prior notices of November 5, 2015, November 13, 2015, December 16, 2015, January 13, 2016, January 27, 2016, February 4, 2016, and February 26, 2016, cite ECO sections 1454.04(h) and (g). The June 21 2016 final notice cites "Chapters 1454.04, 1454.05, and 1454.13."

**{¶ 40}** ECO section 1454.04 sets forth a list of conditions that are "declared to be

public nuisances." ECO 1454.04 (g) proscribes the "storage of junk, disabled vehicles and rubbish on premises." ECO 1454.04 (h) proscribes "inadequate property maintenance." ECO 1454.05 governs structural defects, and section (a) thereof provides: "Any building, structure or paved area exhibiting the following conditions or defects to a significant degree shall be deemed a nuisance and shall be altered or repaired so as to abate the nuisance forthwith," and the section then lists 13 specific conditions. ECO 1454.05 Section (b) provides: "In interpreting and enforcing the foregoing, buildings, structures, and paved areas must satisfy the following requirements in order to be deemed remediated and not a nuisance," and the section lists the requirements for 20 property and building features. Finally, ECO section 1454.13 governs: "Responsibilities of Owners, Operators, Lessees and Occupants." The Demolition Notice notified Satya that the Inn constituted an unabated public nuisance due to the 15 specific conditions on Satya's property set forth in the Demolition Notice, and it provided 30 days for Satya to correct the violations. Satya was provided with an opportunity to be heard at the August 11, 2016 hearing, and we find its assertion that it could only "generally" defend itself due to improper notice lacks merit. As noted above, Patel was not present for the presentation of the majority of Englewood's evidence due to arriving late for the hearing. We conclude that the trial court did not err in concluding that Satya's "due process rights were not violated." Accordingly, Satya's first assigned error is overruled.

{¶ 41} Satya's second assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN AFFIRMING
THE BOARD'S DECISION AS THE DECISION WAS ARBITRARY,

CAPRICIOUS, UNREASONABLE, AND UNSUPPORTED BY THE EVIDENCE.

**{¶ 42}** Satya asserts that the trial court erred in finding that the evidence substantiated the claims that the conditions at the property were unacceptable, because Englewood "failed to cite *any* specific Code section, so the evidence could not have substantiated several provisions of the Code if there were none cited." Regarding rotting and deteriorating wood, Satya asserts that Singer's testimony that failure to paint will lead to additional mold and decay is "speculative as to future alleged violations, nor is this testimony credible, since Singer further stated that he is not a certified building inspector." Satya asserts that "there was no evidence by the Board or its witnesses [sic] to suggest that there was rotting or deteriorated wood." Regarding damaged and unsafe stairways, Satya asserts that Singer testified that on August 2, 2016 the "stairs were repaired without personal knowledge of their condition," and that Patel testified that "the stairs had been repaired [and] accordingly, he could then reopen the second floor." According to Satya, even if the stairs were not repaired as of the hearing, "the Board provided no evidence to support that it meets the definition of 'significant degree' in Section 1454.05."

**{¶ 43}** Regarding insect infestation, public health violations, and mold in guest rooms, Satya asserted that the "evidence provided to the Board was from Public Health and Human Services from June 20, 2016. * * * The City of Englewood provided no testimony to the contrary of Rajesh Patel and the only evidence submitted was almost two months prior to the hearing." According to Satya, the "only testimony provided by the Board was by Mr. Singer, who was not qualified to testify to these alleged violations and did not testify to any updated evidence to support his findings." Regarding

peeling/missing paint, damaged fascia board and electrical outlets/fixtures, Satya asserts that the 14 "photos provided by Mr. Singer were cosmetic," and "there was no evidence rebutting Mr. Patel's testimony." Finally, regarding trash and debris on the property and broken sidewalks, Satya again asserts that the violations "were nothing more than cosmetic issues," and that there "could be no finding that the alleged violations, which were all or almost all completed and fixed, were in violations to a 'significant degree' to find it a nuisance and allow the City to demolish Appellant's property."

**{¶ 44}** Englewood responds that the "violation notices demonstrate that rotting and deteriorating wood had been a problem for nearly a year," and that as Singer testified, "the property's persistent problem with peeling and missing paint leaves the building, including the wood, exposed to the elements which in turn leads to 'additional decay of the building.'" Regarding Satya's assertion that Singer's testimony was speculative, Englewood asserts that "credibility assessments are exactly what the appellate standard of review does *not* second guess," and that Satya "ignores the evidence of *actual* rotting and deterioration that exists in the notices themselves and the pictures of the property cited by the trial court."

**{¶ 45}** Regarding the damaged and unsafe stairway and inaccessible rooms, Englewood asserts that Singer testified extensively "regarding the present condition of the stairwells, the failed repair attempt, and the closure order, as well as the photographs depicting the stairwells. Together, the trial court easily reached the conclusion that the Board's decision was supported by the preponderance of reliable, probative, and substantial evidence." Regarding Satya's assertion that there was no evidence that the deterioration was to a significant degree, Englewood asserts that the "argument is a

curious one, since the evidence showed that the stairway was so badly deteriorated that it was deemed unsafe for use, and that it was so dilapidated that the rooms accessed by it could not even be rented until it was replaced. If that is not a 'significant degree' of deterioration then the term has no true meaning."

{¶ 46} Regarding insect infestation, public health violations, and mold in guest rooms, Englewood asserts that the "June 20, 2016 health department report identifies unsanitary conditions throughout the entirety of the premises, indoors and out, and singles out 28 of the 46 rooms, spanning both the first and second floors, for conditions such as mold, bed bugs, bird droppings, insects, and unclean toilet facilities." Englewood further asserts that the "record actually contains additional inspection reports from the health department dated May 18, 2016, July 6, 2016, and July 20, 2016. All of those reports continued to find the same types of unsanitary conditions." According to Englewood, "Satya's claim that this evidence is limited to conditions that existed two months prior to the hearing is also incorrect," and Patel "did not testify that these unsanitary conditions had been remedied."

{¶ 47} Regarding sagging soffits, peeling/missing paint, damaged vents, porch supports, downspouts, fascia board, and unsecured electrical fixtures, Englewood notes the trial court's "split decision on these conditions," and asserts that "these are far from mere cosmetic issues, both individually and in their aggregate." Englewood notes Singer's testimony that "peeling and missing paint leaves the building open to the elements, which leads to further deterioration and decay," and asserts that paint "is not merely cosmetic; it serves a purpose." Englewood argues that the "risk posed by missing and damaged electrical fixtures i[s] self-evident. Fires and electrical hazards are two of

the most grave concerns that property maintenance codes are in place to prevent."

{¶ 48} Finally, regarding trash and debris on the property, and broken sidewalks, Englewood asserts that Satya's "brief repeats the arguments rejected by the trial court, once again that there was 'no testimony or evidence' of these issues, or that they too were nothing more than cosmetic in nature." According to Englewood, the photographs "introduced at the hearing are perhaps the best evidence of the cracked and broken pavement, the deteriorating sidewalks, and the trash and debris throughout the property." Englewood argues that the photograph of the dumpster area reflects that the "dumpster enclosure is so neglected that it looks on the verge of collapse."

{¶ 49} We initially note that, going back to the November, 2015 initial notices of violations through the June 21, 2016 final notice, Satya did not take steps to abate the nuisance conditions, work out a schedule to do so with Englewood, or appeal the determination of the existence of the nuisance. Having reviewed the record before us, we conclude that the trial court did not abuse its discretion in affirming the decision of the Board regarding the above violations.

{¶ 50} Regarding rotting and deteriorating wood, the notices of violations reflect that this condition was an ongoing problem. The June 22, 2016 email to Singer from Scott Young, who inspected the property the previous day, noted the "stairs are in various degree of decay," and that the "[w]ood treads, riser and runners are rotting." The rotting and deterioration is reflected in a June 28, 2016 photo of the stairs, prior to the July 1, 2016 Demolition Notice. As discussed further below, while Satya replaced the stairs, the new stairs did not pass inspection. Singer testified that deteriorating wooden boards on the property "could have been painted, replaced," and that failure to do so "will lead to

additional mold, additional decay of the building," as reflected in the ongoing nature of the problem. Exposed wood is depicted in multiple exterior photographs taken June 28, 2016. While Patel testified, "we done all the maintenance, whatever the City wants or require, we done all of them," when asked on cross examination if he had anything indicating that the inspections were approved, he responded, "No, he says - - he just left at 3:00 and he says that everything will be passed." (This self-serving hearsay statement could have been rejected by the Board.) Accordingly, Satya's second assignment of error is overruled as to the conditions of rotting and deteriorating wood.

**{¶ 51}** Regarding damaged and unsafe stairways and inaccessible rooms, as noted above a June 28, 2016 photograph depicts rotting wood thereon. While Satya attempted to repair the stairs, Singer testified that "they were improperly replaced. The Building Department had issued a no access to the second floor at an inspection that was taken place on August the 5th." According to Singer, the Building Department indicated that there would be no "occupancy to the second floor until it's complete per code requirements and reinspected." In response, Patel offered the unsubstantiated statement of an unknown "guy" from "NCI." Satya's second assignment of error is overruled as to the conditions of damaged and unsafe stairways and inaccessible rooms.

**{¶ 52}** Regarding insect infestation, public health violations, and mold in guest rooms, Singer testified that there was mold in the rooms as well as bed bugs, and a June 28, 2016 photo depicts mold in a guest room. The June 20, 2016 Inspection Form from Public Health – Dayton & Montgomery County provides that the "sink/faucet in many of the rooms is leaking/ broken, creating a moist environment for mold to grow." The Form further provides that "[i]nsect pests were observed in room 117 as well as room 110.

Have a licensed pest control agency treat the rooms and keep all paper work to show this office." The Form further provides that "rooms 221, 222, and 223 were closed due to bed bugs. Keep the rooms closed and provide paperwork to this office showing proper treatment." The Form provides that a "follow-up inspection will be conducted on or after July 20, 2016." Singer testified that subsequent inspections on both July 6, and 20, 2016 "identified additional violations that existed at the property including bed bugs," and that 10 rooms were closed. Singer testified that to his knowledge, those violations had not been addressed, and Patel provided no evidence to the contrary. Satya's second assignment of error is overruled as to the conditions of insect infestation, public health violations, and mold in guest rooms.

{¶ 53} Regarding peeling/missing paint, damaged fascia board and electrical outlets/fixtures, Singer testified, and the photographs reflect, the existence of peeling paint in multiple areas on June 28, 2016 and August 2, 2016. Singer testified that the "boards clearly could have been painted, replaced," and he presented a photograph of an impaired fascia board. Singer further testified that electrical covers were missing at the Inn, and he presented a June 28, 2016 photograph of an unsecured electrical box. Due to the absence of evidence to the contrary, and for the foregoing reasons, Satya's second assignment of error is overruled as to the conditions of peeling/missing paint, damaged fascia board and electrical outlets/fixtures.

{¶ 54} Finally, regarding trash and debris on the property and broken sidewalks, Singer presented June 26, 2016 photographs of an electric stove on a second floor walkway and a box spring in the parking lot. He further presented June 26, 2016 and August 2, 2016 photographs of the crumbling remains of the dumpster enclosure, and of

broken sidewalks on both dates. Accordingly, Satya's second assignment of error is overruled as to the conditions of trash and debris on the property and broken sidewalks, and overruled in its entirety.

{¶ 55} Satya's third assignment of error is as follows:

THE TRIAL COURT AFFIRMED IN PART AND VACATED IN PART WITHOUT GIVING CLEAR INSTRUCTIONS AS TO THE COURT'S POSITION OF DEMOLITION.

{¶ 56} According to Satya, due "to the extremity of demolition and its ability to eliminate Appellant's business, it is crucial that the Trial Court have the opportunity to clarify its intent based upon its view of the evidence and analysis of the case." Satya asserts that the matter should be remanded for clarification. Englewood responds that the trial court's decision is unambiguous.

{¶ 57} We agree with Englewood. ECO 1454.09 governs the abatement of nuisances and provides: "All or any part of the premises found to constitute a nuisance shall be abated by rehabilitation, demolition, or repair pursuant to the procedures set forth in this chapter." The trial court determined that "the Board properly determined that the property constituted a public nuisance which required abatement, and Appellant failed to completely abate the nuisance as required by the Demolition Notice and Englewood Codified Ordinance section 1454.09." Satya's motion for stay belies its assertion that the trial court's intent is unclear; Satya asserted that "demolition of the property would represent a significant taking of the Appellant's real property and business." We conclude that Satya's third assignment of error lacks merit, and it is accordingly overruled.

{¶ 58} Having overruled all of Satya's assigned errors, the judgment of the trial

court is affirmed.

HALL, J., concurs.

FROELICH, J., concurring.

{¶ 59} I concur.

{¶ 60} The "Statement of Facts" of Appellee says that Appellant "has earned a well-deserved reputation as a recurring offender of property maintenance ordinances and drug and prostitution laws" and "that reputation has only surged recently." The Appellee's brief finds that the "facial disingenuousness of [Appellant's] argument also bears emphasizing;" and that Appellant's "mere suggestion" that it was unaware of its alleged violations not only "defies all credulity," but "is insulting." Appellee contends that, "Like all property owners who are content to be stewards of blight…," Appellant is a "scourge of the [motel] industry" "because something in their DNA compels them to ignore the effect their property has on everyone around them and the city as a whole;" "…even the thought of investment in their property being blasphemy." Appellee argues for an affirmance since "any claim that the trial court's decision evidences an abuse of discretion is detached from reality."

{¶ 61} Appellant, on the other hand, asserts that the actions of the city were "unconscionable."

{¶ 62} These hyperbolic conclusions are irrelevant to the purely legal arguments the parties should make in their briefs. Perhaps appellate counsel must sometimes walk a fine line between ivory tower detachment and disdain for the opponent's perspective. However, gratuitous "adverbial characterizations of the other side's position…do nothing

to advance the brief writer's cause… A neutral, dispassionate characterization of the facts and contentions of the opposing side is much more effective than disparagement and disdain…If you must get this stuff out of your system, put it into the draft and then take it out."[1]

. . . . . . . . . . . . .

Copies mailed to:

Matthew C. Sorg
Michelle T. Sundgaard
Michael P. McNamee
Cynthia P. McNamee
Gregory B. O'Connor
Hon. Timothy N. O'Connell

---

[1] Judge William Curtis Bryson, now the Senior United States Circuit Judge of the U.S. Court of Appeals for the Federal Circuit, http :// how appealing .law. com /20q / 2003_09_01_20q – appellateblog _ archive. html (Sept. 2, 2003) (accessed Nov. 30, 2017; copy on file with Journal of Appellate Practice and Process.)