[Cite as *Overholt v. Emrick*, 2019-Ohio-1273.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

MARK OVERHOLT, et al.

    Appellants

    v.

JUDITH EMRICK, ZONING INSPECTOR, et al.

    Appellees

C.A. No.     17CA0083-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     14CIV0357

DECISION AND JOURNAL ENTRY

Dated: April 8, 2019

CALLAHAN, Judge.

{¶1} Appellants, Mark Overholt and his wife, Sheryl Overholt, appeal a decision of the Medina County Court of Common Pleas that rejected their administrative appeal. This Court affirms in part and reverses in part.

I.

{¶2} Mark Overholt operates a business called Tiger General situated on ten acres of property in Montville Township. His son, Joe Overholt, operates another business on the property called "Cycles R Us." The property itself is owned by Sheryl Overholt. The property is in a rural commercial zoning district; prior to significant revisions to the Montville Township Zoning Resolution ("the Zoning Resolution") in 2004, the property was within a planned commercial development district.

{¶3} Concern that the Overholts maintained a junk yard on the property dates at least to 1995 when, according to minutes of the Board of Zoning Appeals ("BZA"), Mark Overholt

acknowledged the presence of "junk" on his property and "agreed he need[ed] to do something about it." Nevertheless, the Overholts' businesses have operated under conditional zoning certificates dating to 1984 and, through the years, the terms imposed as conditions upon the Overholts' use varied. As was the Township's practice, each certificate was subject to renewal every three years until 2002, when the requirement for periodic renewal of conditional zoning certificates was removed from the Zoning Resolution.

{¶4} In 2002, the Overholts were granted a conditional zoning certificate permitting "[m]achinery and equipment repair" and "[n]ew and used truck and equipment sales and other vehicles that would be currently licensed or titled" [*sic*]. The 2002 zoning certificate imposed various general conditions upon the conditionally permitted use, and it imposed an additional condition "[t]hat within 30 days * * * all inoperable and or junk car vehicles that do not belong to or titled to, the property owner or Tiger General, shall * * * not be stored or allowed to remain on the property." The zoning certificate also provided that compliance with Section 307.E of the Zoning Resolution in effect at the time would be monitored by "[i]inspections to be done every 3 months."

{¶5} Notwithstanding the removal of the three-year renewal requirement from the Zoning Resolution in 2002, the Overholts appeared before the BZA three years later for a renewal of the zoning certificate. During those proceedings, the BZA noted the presence of approximately three thousand motorcycles on the Overholts' property. The 2005 certificate conditionally permitted the same use and required periodic inspections, but it also imposed three additional conditions, one of which regulated the outdoor storage of motorcycles, ATVs, snowmobiles, and watercraft and the parts thereof. Specifically, that condition required that

"[w]ithin a six (6) month period (effective start date of May 16, 2005) there will no longer be any outdoor storage" of those items.

{¶6} The Overholts appeared before the BZA again in 2008 for a hearing that was variously characterized as a review and a renewal of the conditional zoning certificate. During those proceedings, members of the BZA renewed concerns about the number and condition of motorcycles stored on the Overholts' property, noting that the Cycles R Us website advertised a "[s]alvage [y]ard" on the premises. Mark Overholt testified during the 2008 proceedings that their business operation was "the same thing" as "[s]crap yards." His attorney noted that "[t]he intensity of the use [had] increased" and estimated that the number of motorcycles on the property had grown to four thousand. At the conclusion of the 2008 proceedings, the BZA sent a document entitled "Tiger General Conditional Use Permit #11 BZA Statement" to Mr. Overholt. That document summarized the evidence taken by the BZA over the course of several meetings, noted the Overholts' historical reluctance to comply with the Zoning Resolution, and concluded that "the subject property contains a junkyard/salvage yard * * * [that] is not allowed as either a permitted or conditional use" under the Zoning Resolution. Instead of affirming a prior conditional zoning certificate or issuing a new one, the BZA concluded that the Overholts were in violation of their prior conditional zoning certificate and noted that "either revocation proceedings or an enforcement action should be forthcoming."

{¶7} The Overholts appealed that decision to the Medina County Court of Common Pleas. The Court of Common Pleas noted that nothing in the Zoning Resolution required the Overholts to seek a new conditional zoning certificate in 2008 and, therefore, concluded that the BZA's decision could not be construed as a denial of an application for approval of a conditional use. Following from this conclusion, the Court of Common Pleas determined that the BZA's

decision had no immediate, independent effect and was not appealable under R.C. Chapter 2506. The Court also opined that the only course of action open to the Township was to pursue enforcement of the Zoning Resolution.

{¶8} Following this decision, in 2012, the then-Montville Township Zoning Inspector, Judith Emrick, cited the Overholts for twelve alleged violations of the Zoning Resolution. The Overholts appealed to the BZA, which dismissed most of the alleged violations. The BZA upheld two of the violations, concluding that the Overholts' use of the property constituted an impermissible junk yard or salvage operation and that they were storing inoperable motor vehicles without an enclosure in violation of Section 307.E of the pre-2004 version of the Zoning Resolution. The Overholts appealed to the Medina County Court of Common Pleas pursuant to R.C. Chapter 2506, and the trial court upheld the decision of the BZA. The Overholts filed this appeal. Their two assignments of error are rearranged for purposes of discussion.

II.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT ERRED BY UPHOLDING THE BZA'S FINDING THAT A MOTORCYCLE COLLECTION ON THE OVERHOLTS' PROPERTY WAS A "JUNKYARD" WHEN THE COLLECTION: A) DID NOT FIT THE DEFINITION OF "JUNKYARD" IN THE RESOLUTION; AND B) WAS AN INTEGRAL PART OF A MOTORCYCLE BUSINESS USE THE BZA APPROVED AS PART OF THE OVERHOLTS' CONDITIONAL ZONING CERTIFICATE IN MARCH 2002 WHICH USE, INCLUDING THE MOTORCYCLE COLLECTION, WAS ACKNOWLEDGED AS ZONING COMPLIANT BY THE TOWNSHIP ZONING INSPECTOR AND ONE OF THE TOWNSHIP TRUSTEES IN SEPTEMBER 2002 AND DID NOT CHANGE (OTHER THAN IN SIZE) THEREAFTER.

{¶9} The Overholts' second assignment of error challenges the trial court's decision upholding the BZA's conclusion that their property contained a junk yard.

{¶10} Under R.C. 2506.04, a trial court considering an administrative appeal reviews the order at issue to determine whether it is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." The scope of this Court's review of the trial court decision is "narrower and more deferential":

> [T]he standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law.

*Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 25, 30. When reviewing a trial court's decision in an administrative appeal, this Court must determine whether, as a matter of law, the trial court's decision is unsupported by a preponderance of reliable, probative, and substantial evidence. *Independence v. Office of Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 14, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). *See also Cleveland Clinic Found.* at ¶ 27.

{¶11} Montville Township's Zoning Resolution has prohibited junk yards consistently from its passage in 1950 to the present: The 1950 Zoning Resolution provided that "Prohibited Uses" included "Junk yards, automobile graveyards or places for the collection of scrap metal, paper, rags, glass or junk for sale, salvage or storage purposes, or for dismantling used vehicles." More recent iterations of the Zoning Resolution define permitted and conditionally permitted uses and provide that all uses not permitted or conditionally permitted in a zoning district are prohibited.

{¶12} The version of the Zoning Resolution in effect at the time that the Zoning Inspector issued notice of the alleged violations to the Overholts provides a schedule of permitted and conditionally permitted uses by zoning district and indicates those uses that are

permitted in some districts, but prohibited in others. With respect to the conditional use entitled "[a]utomotive service station; trade contractor's facility, vehicle, equipment and machinery repair garage," Section 450.6(E)(4) of the Zoning Resolution also provides that "No scrap metal, scrap or salvaged parts, junk vehicles or used oil, antifreeze, transmission or other such fluids shall be stored above ground on the site." Section 450.6(E)(5) provides that "No junk or inoperative or unlicensed motor vehicles shall be permitted to remain on the property outside an enclosed structure for more than 48 hours."

{¶13} Two definitions set forth in the Zoning Resolution are also relevant to the issues at hand. Section 210.2(B)(99) defines "junk" as follows:

> Bones, litter and manufactured goods including, but not limited to  scrap iron, scrap tin, scrap glass, scrap brass, scrap copper, scrap lead or scrap zinc and all other scrap metals and their alloys, rags, used cloth, used rubber, used rope, used tinfoil, used bottles, old and used machinery, used tolls, used appliances, used fixtures, used utensils, used building materials, used boxes or crates, used pipe or pipe fittings, and used tires that are so worn, deteriorated or obsolete as to make them unusable in their existing condition, but are subject to being dismantled or recycled.

Section 210.2(B)(100) defines a "junk yard" as:

> The use of more than 25 square feet of any land, building or structure, whether for private and/or commercial purposes, where waste, discarded or salvaged materials such as scrap metals[,] * * *  discarded motor vehicles, paper, rags, rubber, cordage, barrels, etc. are sold, stored, bought, exchanged, baled, packed, sorted, disassembled, dismantled or handled.

Neither junk yards nor salvage yards[1] are among the uses permitted or conditionally permitted in a rural commercial district by the Zoning Resolution.

{¶14} With respect to the BZA's conclusion that the Overholts maintained an impermissible junk yard on their property, the trial court concluded that the Zoning Resolution is

---

[1] The version of the Zoning Resolution in effect in 2012 did not define "salvage yards."

not ambiguous and that the BZA's decision was "supported by a preponderance of reliable, probative and substantial evidence that the [Overholts] operated a junk yard * * * [and] [t]he [BZA's] decision is not otherwise illegal or unconstitutional." The trial court's decision, in turn, is supported by a preponderance of reliable, probative, and substantial evidence as a matter of law.

{¶15} Paul Jeffers, the assistant zoning inspector for Montville Township, testified before the BZA that he visited the Overholts' property in person on December 12, 2012, when the Zoning Inspector executed a search warrant. He noted that motorcycles, motorcycle components and frames, and other debris were piled on the property, including fenders and "partly dismantled" frames. Mr. Jeffers described the arrangement of the motorcycles as "like books in a library, just stuffed together[.]" He explained that Cycles R Us holds itself out as the operator of a "salvage yard of over 3000 used motorcycles, ATV[]s, watercrafts, [and] sleds" on its website and on social media. Mr. Jeffers also verified the photographs that he took depicting the condition of the property on the day that the search warrant was executed, and he summarized his observations by noting that the southeast portion of the property constituted a junk yard in that it was filled with "[d]ismantled, disassembled motorcycles, Skid-Doos [*sic*], boats, ATVs, quads, Jet Skis, [and] snowmobiles." Retired Zoning Inspector Emrick concurred, noting that the property is "loaded with a plethora of motorcycles," many of which are in varying states of disrepair:

> Well, they're all crushed together. Some of them don't have tires on them. Some of them don't have motors on them. Some of them * * * don't have gas tanks. They're not going anywhere without a motor, tire, or gas tank.

Ms. Emrick noted that the number of motorcycles on the property had numbered in the thousands at various points prior to the proceedings. Similarly, a neighboring property owner noted that

there are "hundreds and hundreds" of motorcycle "frames, engines, transmissions, tires, [and] rims" on the Overholts' property.

{¶16} Regardless of whether this use of the Overholts' property is in connection with their business operations—or whether it is, in their words, "an integral part" of their conditionally permitted commercial use of the property—the record supports the conclusion that a portion of the property was being operated as a junk yard, as that term is defined by the Zoning Resolution. The trial court's decision upholding the BZA in this regard is supported by a preponderance of reliable, probative, and substantial evidence as a matter of law.

{¶17} Moreover, because the conditions on the Overholts' property constituted a junk yard within the meaning of the Zoning Resolution, those conditions could not have been conditionally permitted by the BZA, as the Overholts maintain. R.C. 519.14(C), which grants township boards of zoning appeals the power to allow conditional uses, functions in conjunction with a township's zoning resolution. *See Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 342 (1980). A BZA's "power to issue such a certificate is no greater than that vested in it by the township zoning resolution." *Id.* Drawing from this principle, this Court has concluded that the conditions and terms of a conditional use permit must be specifically authorized by the relevant zoning resolution. *See Smith v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. Summit No. 25575, 2012-Ohio-1175, ¶ 11-12. Junk yards are neither permitted nor conditionally permitted in rural commercial districts by the Montville Township Zoning Resolution, so the Overholts' argument that their conditional zoning certificates effectively permitted the maintenance of a junk yard is not well taken.

{¶18} The Overholts' second assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED BY AFFIRMING THE MONTVILLE TOWNSHIP BOARD OF ZONING APPEALS HOLDING THAT CONDUCT BY THE APPELLANTS MARK AND SHERYL OVERHOLT AND TIGER GENERAL IN 2012 VIOLATED A PROVISION OF THE TOWNSHIP'S ZONING RESOLUTION THAT HAD BEEN REPEALED AT LEAST SIX YEARS BEFORE THAT CONDUCT.

{¶19} The Overholts' first assignment of error argues that the trial court erred as a matter of law by upholding the BZA's conclusions that they violated a repealed portion of the Zoning Resolution. This Court agrees.

{¶20} Before Montville Township substantially revised the Zoning Resolution in 2004, Section 307.E provided, in part, that "[s]torage of any inoperable motor propelled vehicle or accessory to same which is in the process of being wrecked, dismantled or stored and/or which does not have a license thereon which is valid, shall not be permitted on any lot or parcel of land except in an enclosed accessory garage." The BZA referenced this language in the Overholts' conditional zoning certificates that were effective on April 3, 1995, but the BZA issued a second conditional zoning certificate six months later that bore the notation "[d]eleted by the Board 11/20/95." The language of former Section 307.E, which prohibited outdoor storage of certain items on all properties in the Township, remained part of the text of the Zoning Resolution until it was removed.

{¶21} When the Zoning Inspector issued a notice of violation to the Overholts on March 13, 2012, former Section 307.E had been removed from the Zoning Resolution. Nonetheless, the notice of violation stated, in relevant part:

YOU ARE HEREBY NOTIFIED THAT YOU ARE IN VIOLATION OF THE MONTVILLE TOWNSHIP ZONING RESOLUTION AS FOLLOWS:

* * *

11. You are in violation of your Conditional Use Certificate and/or the Montville Township Zoning Resolution in that you either have and/or have allowed scrap metal, scrap and/or salvaged parts, [and] junk vehicles * * * on the property in such a manner as to be in violation of your Conditional Zoning Certificate and/or the Montville Township Zoning Resolution.

12. You are in violation of your Conditional Use Certificate and/or the Montville Township Zoning Resolution in that you have or have allowed junk, inoperative and/or unlicensed motor vehicles to remain outside of an enclosed structure for more than 48 hours.

The BZA's decision reasoned that, with respect to violation eleven, the Overholts violated the Zoning Resolution by operating a prohibited junk yard and by violating former Section 307.E.

With respect to former Section 307.E, the BZA wrote:

In addition, Section 307.E prohibits the presence of inoperable motor vehicles "... *except in an enclosed accessory garage*." The evidence shows clearly that more than three thousand inoperable motorcycles and other miscellaneous vehicles have been stored outside on the Property for years. This is a clear violation of the lot storage requirements of Section 307.E

(Emphasis in original.) Similarly, the BZA concluded that the Overholts violated former Section 307.E in connection with violation number twelve:

Paragraph 12 presents an operational violation of the lot storage regulations contained in Section 307.E of the Zoning Resolution. We find the provisions of Section 307.E are applicable to the Property and have always been applicable to the Property before, during and after the issuance of [conditional zoning certificates] #6 and #7, in light of the fact that Section 307.E is part of the general sections of the Zoning Resolution applicable to all properties in Montville Township. We uphold paragraph 12 as a valid violation of Section 307.E of the Zoning Resolution.

With respect to both of these violations, the BZA took great pains to determine the historical applicability of former Section 307.E to the Overholts' property, but the violations presume that former Section 307.E remained part of the Zoning Resolution in 2012. Consequently, the BZA concluded that the Overholts' property was in violation of a portion of the Zoning Resolution that was no longer in effect.

{¶22} The trial court upheld the BZA's decision not based on former Section 307.E, but based on a different section of the current Zoning Resolution, Section 430.1H. That Section describes the purpose for establishing a rural commercial district in the Township:

> To provide a Rural Commercial District (R-C) that encourages a broader range of general commercial activities and community facilities, including personal service facilities, general retail, automotive and agricultural uses that are not necessarily dependent on the availability of sanitary sewers. Such areas may include outdoor storage and display activities, provided the outdoor activities do not adversely impact adjacent residential uses.

The BZA did not conclude that the Overholts violated Section 430.1H, however, nor does it appear that the Zoning Inspector provided notice to the Overholts of an alleged violation of that section. In addition, there is no suggestion in the Zoning Resolution that Section 430.1H was intended as a direct replacement for former Section 307.E To the contrary, while former Section 307.E was found in general provisions of the Zoning Resolution that related to all properties within Montville Township, Section 430.1H appears in the purpose statement of a new section of the Zoning Resolution that regulates a newly created zoning district.

{¶23} To the extent that the trial court upheld the BZA's determination that the Overholts were in violation of former Section 307.E, therefore, the trial court erred in its application of the Zoning Resolution. *See Cleveland Clinic Found.*, 2014-Ohio-4809 at ¶ 25, 30. The Overholts' first assignment of error is sustained.

III.

{¶24} The Overholts' first assignment of error is sustained. Their second assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed in part and reversed in part.

Judgment affirmed in part<br>and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶25} I respectfully dissent in regard to the first assignment of error. I disagree with the majority's conclusion that the trial court upheld the BZA's decision on the basis of Section 430.1H. Instead, it appears the trial court upheld the BZA's decision on the basis that the Overholts were in violation of their conditional zoning certificate.

{¶26} In 2005, the Overholts obtained a conditional zoning certificate that contained a number of conditions. As noted by the majority, one condition required the Overholts to eliminate any outdoor storage of motorcycles and or parts, ATVs and or parts, snowmobiles and or parts, and watercraft and or parts on their property within six months. In 2012, the zoning inspector placed the Overholts on notice of a number of violations of their conditional zoning certificate and/or the zoning resolution. The BZA determined that the Overholts impermissibly engaged in the outdoor storage of thousands of inoperable motorcycles and other miscellaneous vehicles on their property. The trial court upheld the BZA decision. While former Section 307.E was mischaracterized and misapplied throughout the proceedings below, I cannot say, based on our limited scope of review, that the trial court erred in upholding the BZA's decision as there is clear evidence that the Overholts violated the terms of their conditional zoning certificate and the zoning inspector provided adequate notice of those violations.

{¶27} I concur in the majority's resolution of the second assignment of error.

APPEARANCES:

BENJAMIN J. OCKNER, Attorney at Law, for Appellants.

KATHARINA E. DEVANNEY, Attorney at Law, for Appellees.