[Cite as *TMS Ents., Ltd. v. Cleveland Bd. of Zoning Appeals*, 2024-Ohio-1888.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

TMS ENTERPRISES LTD.,                    :

    Plaintiff-Appellant,          :

                                No. 113259

    v.                            :

THE CITY OF CLEVELAND
BOARD OF ZONING APPEALS,         :

    Defendant-Appellee.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 16, 2024

---

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-952073

---

### *Appearances:*

The Lindner Law Firm LLC and Daniel F. Lindner, *for appellant*.

Mark Griffin, Cleveland Director of Law, and Carolyn M. Downey, Assistant Director of Law, *for appellee*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} In this administrative appeal, appellant, TMS Enterprises Ltd. ("TMS"),

appeals an order affirming a decision of the Cleveland Board of Zoning Appeals

("BZA" or "the board") that denied TMS's request for a use variance. TMS claims the following errors:

> 1. The trial court should be reversed because appellant's property was never subject to the rezoning issue in this case. Due to the permits that appellant pulled, the prior general retail zoning classification vested upon the property, and appellant's in-process "Motor Vehicle Sales Facility" use constituted a pre-existing non-conforming use as a matter of law. The decision of the BZA should be overturned.

> 2. The trial court decision should be reversed and the decision of the BZA should be overturned because the rezoning of the property by the appellee constitutes unconstitutional spot zoning.

{¶ 2} We reverse the common pleas court's judgment and remand the cause to the Cleveland Board of Zoning Appeals ("BZA") for further proceedings.

## I. Facts and Procedural History

{¶ 3} TMS is an Ohio limited liability company that sells used cars and develops real estate. In February 2020, the Cuyahoga County Sheriff's Office conducted a sale of foreclosed property ("the property") located on Harvard Avenue in Cleveland. TMS purchased the property at the sheriff's sale, and the deed was recorded on April 27, 2020. The property was subsequently consolidated with an adjacent parcel on September 24, 2020.

{¶ 4} At the time TMS purchased the property, the property was zoned "General Retail-C2." This zoning classification permitted many business uses, including the sale of motor vehicles, even though a two-story home existed on the property. TMS filed a change-of-use application on September 22, 2020, seeking to change the use from residential to a used car sales facility as defined by Cleveland Codified Ordinances ("C.C.O.") 325.485. After filing the change-of-use application,

TMS applied for permits, including a demolition permit in October 2020, to begin the process of transforming the property into a used car sales lot. To that end, TMS subsequently demolished a two-story house on the property. (Tr. 6.)

{¶ 5} On October 7, 2020, after TMS had already pulled the necessary permits to convert the property into a used car sales lot, the city of Cleveland ("Cleveland" or "the city"), by and through city council, enacted Cleveland zoning ordinance No. 760-2020, that changed the zoning classification from General Retail C-2 to Multi-Family District-D2. The zoning change, which took effect in November 2020, did not permit used car sales. TMS filed an application for compliance with the city, and the city responded with a notice of nonconforming use. The notice of nonconforming use acknowledged that a used car lot was "first permitted in Gen. Retail District if 100' from residential district per section 343.11(b)(2)(I)," but indicated that it is not a permitted use in a multifamily district.

{¶ 6} TMS submitted a variance application to the BZA in April 2021. The BZA held a public hearing on the requested variance in July 2021. Elizabeth Kukla ("Kukla"), executive secretary of the BZA, stated that the property was zoned general retail in 1929 and that the zoning changed from general retail to multifamily residential in November 2020. (Tr. 6.) Kurt Weaver, an architect representing TMS, explained that the subject property was originally composed of two parcels that were consolidated after TMS purchased the property. (Tr. 8.) TMS originally submitted requests for a use variance and for area variances of the off-street parking regulations. However, after receiving comments from the board, the plans were

revised, and TMS ultimately dispensed with the request for area variances. (Tr. 9-10.) Thus, Weaver explained, TMS was only requesting the use variance to allow it to establish a used car sales lot on the property at the time of the hearing. (Tr. 10.)

{¶ 7} Thomas Sullivan ("Sullivan"), principal member of TMS, testified that he invested $40,000 in the property to demolish a condemned two-story structure and to remedy a dangerous, preexisting, six-foot trench on the property. He explained that his intent is to "beautify the area" by "building a business that looks good esthetically and provide[s] a service for the community." (Tr. 14, 16.) He also asserted that if the use variance were denied, the property would be "worth basically nothing" despite his investment of $40,000. (Tr. 15.)

{¶ 8} Chris Alvarado ("Alvarado"), executive director of Slavic Village Development, stated that he was willing to work with TMS, if it received the use variance. However, he also stated that housing values in that area had been "skyrocketing" in recent years. (Tr. 17.) He explained that home prices and appraisals increased 50 percent from 2014 to 2020, and that "residential development is on the uptake." (Tr. 17.) According to Alvarado, the area in which TMS's property is located "has been primarily residential," but he acknowledged there were also some used car sales lots nearby. In conclusion, Alvarado stated, "We [would] rather not see another used car lot" but if the variance were approved, Slavic Village Development would work with TMS to make sure the property looks good and is successful. (Tr. 18.)

{¶ 9} Councilman Anthony Brancatelli ("Councilman Brancatelli") reiterated Alvarado's comments. He stated that new homes were being built in the neighborhood in the last few years and that property values were increasing. He further stated that a used car lot would not have been allowed on the property even before the zoning change because the property could only be used for a commercial purpose such as a used car sales lot if it were more than 100 feet from a residential district and the property did not meet this requirement. (Tr. 21, 29.)

{¶ 10} Notices of the hearing on TMS's requested variance were sent to affected property owners as required by C.C.O. 329.01(i). Several neighboring property owners expressed opposition to the variance in letters and emails submitted to the BZA. One property owner, who lives across the street from TMS's property, expressed concern that a used car lot would increase the traffic on Harvard Avenue and will result in increased crime in the neighborhood. (Tr. 20.) Another neighbor stated she opposed the variance because there was already a used car lot closer to the business district and the location of TMS's property was primarily "a residential area of Harvard, including a small park across the street[,] surrounding houses[,] and senior apartments." (Tr. 21.) This neighbor further lamented, "It's bad enough that TMS already tore the house down and mature trees. Please do not allow this car lot to further reduce our residential neighborhood." (Tr. 21.)

{¶ 11} Sullivan responded to the neighbors' concerns and reiterated:

> [T]he goal is to beautify the property. If anyone looked at what that property looked like beforehand, the house has been condemned for years. It was boarded up and it did nothing for the property exactly.

(Tr. 27.)

{¶ 12} After hearing the evidence, the board unanimously denied TMS's variance request. TMS filed timely notices of appeal with the BZA and the Cuyahoga County Court of Common Pleas, pursuant to R.C. Chapter 2506. In affirming the BZA's decision, the trial court found no evidence that TMS engaged in a permissible, nonconforming use prior to the rezoning that would have conferred a vested right on the property for the nonconforming use. The trial court also found TMS's property was not subject to illegal spot zoning because the evidence in the administrative record showed that although the property was near a business district, it was surrounded by residences. TMS now appeals the common pleas court's decision.

## II. Law and Analysis

### A. Standard of Review

{¶ 13} In an administrative appeal, the common pleas court considers the "whole record," including any new or supplemental evidence admitted pursuant to R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000); *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, 145 N.E.3d 246, ¶ 13; *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 13.

{¶ 14} In reviewing a board of zoning appeals' decision, the common pleas court must "not substitute its judgment for that of an administrative board * * * unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

{¶ 15} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope'" than the standard of review applied by the trial court. (Emphasis deleted.) *Henley* at 147, quoting *Kisil* at 34. Appellate-court review "does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Henley* at 147. Therefore, the appellate court must affirm the common pleas court's decision, "unless [it] finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil* at 34.

{¶ 16} Ultimately, the standard of review we apply in an administrative appeal "permits reversal only when the court of common pleas errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30. "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance." *Id.*

## B. Change-of-Use Application

{¶ 17} In the first assignment of error, TMS argues the trial court erred in affirming the BZA's decision denying its request for a use variance because it "pulled permits" for the construction of a used sales lot prior to the rezoning of its property, and it, therefore, had a vested right to use the property for that purpose.

{¶ 18} "[A] local zoning ordinance is a valid exercise of police power unless clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Kelley's Island v. Johnson*, 6th Dist. Erie No. E-95-030, 1996 Ohio App. LEXIS 173, *4 (Jan. 26, 1996), citing *Euclid v. Ambler Realty*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

{¶ 19} However, a zoning regulation must also recognize and protect vested property rights that existed prior to the passage of the regulation. *Id.*, citing *Euclid* generally. "Although zoning ordinances may regulate pre-existing, non-conforming uses, and may even contemplate the gradual elimination of the nonconforming use, they may not deprive the owner of a vested right." *Id.*, citing *Akron v. Chapman*, 160 Ohio St. 382, 116 N.E.2d 697 (1953).

{¶ 20} In *Gibson v. Oberlin*, 171 Ohio St. 1, 167 N.E.2d 651 (1960), the Ohio Supreme Court held that municipalities may not apply zoning enactments retroactively if doing so will deprive a property owner of his or her "'right to a building permit in accordance with the zoning ordinance in effect at the time of the application for such permit.'" *Id.* at 7, quoting *State ex rel. Fairmount Ctr. Co., v.*

*Arnold*, 138 Ohio St. 259, 34 N.E.2d 777 (1941), paragraph one of the syllabus. The court explained:

> Thus it is established that under the police power the use of land and the construction of buildings may be regulated, and further that a property owner has no vested right in the continuance of any particular regulation. However, once regulations have been established, and so long as such regulations are in force, the state and its subdivisions are as much bound as the people to abide by such regulations. In other words, laws bind the state as well as the people.
>
> Thus, where, as in the instant case, a property owner has complied with all the legislative requirements for the procurement of a building permit and his proposed structure falls within the use classification of the area in which he proposes to build it, he has a right to such permit, and there is a duty on the part of the officer charged therewith to issue it. Subsequent legislation enacted pending applicant's attempted enforcement of such right through administrative or legal channels cannot deprive him of the right. The right became vested, under the law applicable thereto, upon the filing of the application for the permit.

*Id.* at 8-9.

{¶ 21} The sheriff's deed to the property shows that TMS purchased the property at a sheriff's sale on February 10, 2020, and that the deed was recorded on April 17, 2020. At the time TMS purchased the property, it was zoned "General Retail-C2." On October 7, 2020, Cleveland City Council passed Cleveland zoning ordinances No.760-2020, that changed the zoning to "Multi-Family Residential." The zoning change went into effect on November 6, 2020. (Tr. 6.)

{¶ 22} On September 22, 2020, more than a month before the zoning change, TMS filed a change-of-use application. (Tr. 6, exhibit No. 3 attached to "Brief of Appellant" filed Feb. 2, 2022.) It also applied for a permit to demolish the two-story structure on the property in October 2020, to clear the land for the used

car sales lot. (Tr. 6.) Therefore, TMS applied for permits to construct a used car sales facility on the property while the property was still zoned "General Retail-C2." And, as previously stated, the sale of used cars was a permitted use under the General Retail-C2 zoning classification, and TMS had a vested right in the prior general retail zoning classification that allowed the sale of used cars. Therefore, the trial court erred as a matter of law in finding that TMS did not have a vested right in that preexisting, nonconforming use.

{¶ 23} The first assignment of error is sustained.

{¶ 24} Having found that TMS had a vested right to use the property as a used car sales lot, the second assignment of error, in which TMS argues the denial of its requested variance constituted unconstitutional spot zoning, is moot.

{¶ 25} We reverse the common pleas court's decision and remand the case to the BZA. On remand, the BZA shall consider TMS's change-of-use application in light of its vested right to use the property under the property's prior general retail zoning classification. We further note that, despite assertions to the contrary, C.C.O. 343.11, which governs general retail districts, does not provide any restriction prohibiting the operation of motor vehicle sales facilities within 100 feet of a residential district.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Board of Zoning Appeals to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR